UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

THERESA A. LOGAN,

                    Plaintiff,

v.                                                                          3:23-CV-0471
                                                                            (GTS/ML)
NEW YORK MUNICIPAL INSURANCE
RECIPROCAL, for the Town of Windsor,
New York; ROBERT BRINK, Snowplow
Truck Driver; and GREG STORY,
Wingman incharge of snowplow blade,

                                        Defendants.

_____

APPEARANCES:                                                OF COUNSEL:

THERESA A. LOGAN
   Plaintiff, *Pro Se*
50 Williams Road
Windsor, New York 13865


MIROSLAV LOVRIC, United States Magistrate Judge


**<u>ORDER and REPORT-RECOMMENDATION</u>**

       The Clerk has sent this *pro se* Complaint together with an application to proceed *in forma pauperis* filed by Theresa A. Logan ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2.)  For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed without leave to amend.

**I.       PROCEDURAL HISTORY**

       On May 18, 2018, Plaintiff commenced a *pro se* action in the Northern District of New York, Case No. 3:18-CV-0593 (GTS/DEP) ("*Logan I*") against the Town of Windsor, Robert

Brinks, Gregg Story,[1] and New York Municipal Insurance Reciprocal ("Defendants") asserting claims of common law assault and battery based on injuries that she sustained on or about March 7, 2011, when she was allegedly struck by debris thrown in her direction by a snowplow operated by Defendants Brinks and Story, who were employees of the Town of Windsor at the time. (*Logan I*, Dkt. No. 4 at 2.)

On June 26, 2018, United States Magistrate Judge David E. Peebles granted Plaintiff's IFP application but recommended that Plaintiff's Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), with leave to replead because it did not allege facts plausibly suggesting that the Court had subject matter jurisdiction over her claims. (*Logan I*, Dkt. No. 4 at 9.)

On July 11, 2018, Plaintiff filed an Amended Complaint. (*Logan I*, Dkt. No. 5.) On August 14, 2018, Chief United States District Judge Glenn T. Suddaby, accepted and adopted in its entirety Magistrate Judge Peebles's Report-Recommendation and dismissed Plaintiff's Amended Complaint. (*Logan I*, Dkt. No. 6.) Chief Judge Suddaby held that Plaintiff's Amended Complaint did "not cure the pleading defects identified by Magistrate Judge Peebles in his thorough Report-Recommendation." (*Id*. at 3.) In addition, Chief Judge Suddaby noted that "the Amended Complaint does not allege either events occurring within three years of the date of the filing of the Complaint or facts plausibly suggesting an exception to the statute of limitations (such as a continuing violation)." (*Id.* at 4.) However, since Plaintiff did not have the benefit of Chief Judge Suddaby's Decision and Order when she filed her Amended Complaint on July 11,

---

[1]     The correct spelling of Defendant Story's name is unclear. (*Compare Logan I*, Dkt. No. 1 at 1 [referring to "Gregg Story"], *Logan I*, Dkt. No. 5 at 3 [same], *Logan I*, Dkt. No. 7 at 1 [same], *Logan I*, Dkt. No. 13 at 1 [same], *and Logan II*, Dkt. No. 1 at 1 [same], *with* Dkt. No. 1 at 1 [referring to "Greg Story"], *and* Dkt. No. 1 at 2 [referring to "Greg Storey"].) For purposes of clarity, the Court will refer to him as "Defendant Story."

2018, she was given "one *final* chance to correct these pleading defects."  (*Id.* at 5 [emphasis in original].)

On September 14, 2018, Plaintiff filed a Second Amended Complaint.  (*Logan I*, Dkt. No. 7.)  On September 28, 2018, Magistrate Judge Peebles recommended that Plaintiff's Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), without leave to replead.  (*Logan I*, Dkt. No. 8.)

On October 19, 2018, Plaintiff filed a Third Amended Complaint.  (*Logan I*, Dkt. No. 13.)  On December 17, 2018, Chief Judge Suddaby accepted and adopted Magistrate Judge Peebles's Report-Recommendation in its entirety, dismissed Plaintiff's Third Amended Complaint, and certified that an appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).  (*Logan I*, Dkt. No. 14.)

On January 11, 2019, Plaintiff filed a notice of appeal.  (*Logan I*, Dkt. No. 16.)  On June 5, 2019, the Second Circuit issued an order dismissing Plaintiff's appeal because it "lacks an arguable basis either in law or in fact."  (*Logan I*, Dkt. No. 18.)

On December 20, 2019, Plaintiff commenced another *pro se* action against Defendants in the Northern District of New York, Case No. 3:19-CV-1590 (GTS/ML) ("*Logan II*").  That action also related to the alleged incident that occurred on March 7, 2011, when Plaintiff was struck by debris thrown in her direction by a snowplow operated by Defendants Brinks and Story, who were employees of the Town of Windsor at the time.  (*Logan II*, Dkt. No. 1.)  Plaintiff asserted one claim of negligence based on the operation of the snowplow, and one claim of defamation based on Defendants' attorney's statements.  (*Id*.)

On April 23, 2020, the undersigned granted Plaintiff's motion for leave to proceed *in forma pauperis* and recommended that Plaintiff's claims be dismissed without leave to amend.

(*Logan II*, Dkt. No. 5.)  On July 20, 2020, Chief United States District Judge Glenn T. Suddaby accepted and adopted the undersigned's report-recommendation in its entirety.  (*Logan II*, Dkt. No. 12.)  Chief Judge Suddaby dismissed Plaintiff's Complaint in *Logan II* without leave to amend.  (*Id.*; *Logan II*, Dkt. No. 13.)

On July 29, 2020, Plaintiff filed a notice of appeal in *Logan II*.  (*Logan II*, Dkt. No. 14.)  On March 19, 2021, the Second Circuit affirmed the judgment of the district court.  (*Logan II*, Dkt. No. 18.)

## II.     PLAINTIFF'S ALLEGATIONS

Construed as liberally[2] as possible, Plaintiff's Complaint alleges that she sustained injuries on or about March 7, 2011, when she was struck by debris thrown in her direction by a snowplow operated by Defendants Brinks and Story, who were employees of the Town of Windsor at the time.  (*See generally* Dkt. No. 1.)  Plaintiff alleges that as a result of these injuries, she sustained permanent physical damage, resigned from her job, and has become financially stressed.  (*Id.*)  Plaintiff does not appear to assert any causes of action and seeks at least $75,000.00 in damages.  (*Id.*)

Plaintiff also filed an application for leave to proceed *in forma pauperis*.  (Dkt. No. 2.)

## III.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

---

[2]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[3]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[4]

Plaintiff is advised that the ability to litigate an action without prepayment of fees is a privilege that can be denied, revoked, or limited based upon a showing of prior abuses.  *See In re Anderson*, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons.").  The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]"  28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald*, 489 U.S. 180, 183 (1989).  For this reason, courts are regarded as possessing discretionary authority to deny IFP status to litigants who have abused the privilege.  *See Hurt v. Soc. Sec. Admin.*, 544 F.3d 308,

---

[3]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]    Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

309-310 (D.C. Cir. 2008) (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 444-45 (D.C. Cir. 2007) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content, frequency, and disposition of their previous filings[.]'").

Plaintiff's litigation history in this district suggests that she is on the brink of being found to have abused the privilege of proceeding IFP.  In fact, United States District Judge Glenn T. Suddaby cautioned Plaintiff in *Logan II* that, "underlying <u>further unmerited filings by her will likely result in an Order for her to Show Cause why a Pre-Filing Order should not be issued against her, enjoining her from filing any future documents in this Court as a *pro se* litigant without leave of the Court</u>."  *Logan v. Town of Windsor, New York*, 19-CV-1590, 2020 WL 4049943, at *1 (N.D.N.Y. July 20, 2020) (Suddaby, C.J.).

Common to the other dismissed actions filed by Plaintiff in this district (including, as will be discussed below, the current Complaint under consideration in this report) is her failure to include factual allegations in her complaints that demonstrate that the Court has jurisdiction to consider her claims.  Accordingly, Plaintiff is hereby cautioned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the court, and (2) any further filing of patently frivolous lawsuits may result in the denial of any request to proceed IFP in an action and/or a recommendation to the Chief District Judge that a filing injunction be issued against Plaintiff, barring her from filing any future lawsuits in this district without prior permission.

## IV.     LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed.  *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an

indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## V.    ANALYSIS

After careful consideration, I recommend dismissal of Plaintiff's claims because the Complaint fails to allege facts plausibly suggesting that the Court has subject matter jurisdiction.

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agric., Inc. v. Perry*, 12-CV-6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* 09-CV-7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013)).  Federal courts are mandated to examine their own jurisdiction *sua sponte* at every stage of the litigation.  *ACCD Global Agric., Inc.*, 2013 WL 840706, at *1; *see In re Tronox, Inc.*, 855 F.3d 84, 85 (2d Cir. 2017) (federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*).

> A federal court exercises limited jurisdiction pursuant to Article III of the Constitution.  It has subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332.

*Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 511-12 (D. Conn. 2015) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction) (footnote omitted)), *reconsideration denied*, 14-CV-0053, 2015 WL 2124365 (D. Conn. May 6, 2015).

The existence of a federal question is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  28 U.S.C. § 1331.  A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

Here, the Complaint explicitly left blank whether the basis for federal court jurisdiction is based on a federal question or diversity of citizenship.  (Dkt. No. 1 at 3.)  Instead, it again appears as though Plaintiff believes she can bring her claims in federal court based on a friend's referral, despite the Court rejecting this contention in *Logan II*.  (Dkt. No. 1 at 11; *see also Logan II*, Dkt. No. 1 at 3; *Logan II*, Dkt. No. 5 at 9-10.)

Notwithstanding, the Civil Cover Sheet, which accompanied Plaintiff's Complaint, alleges that the basis for the Court's jurisdiction is that it presents a federal question.  (Dkt. No. 1, Attach. 1.)  However, the Complaint fails to cite any federal statute, treaty, or the United States Constitution as a basis for Plaintiff's claims.  Merely because the events giving rise to Plaintiff's claims occurred within the Northern District of New York, does not convey jurisdiction to this Court.  The only conceivable cause of action based on the factual allegations contained in the Complaint is negligence, which is a New York State common-law tort governed

by state law.  As currently pleaded, this state-law claim does not raise any federal question. *Logan v. Town of Windsor, New York*, 19-CV-1590, 2020 WL 1950860, at *5 (N.D.N.Y. Apr. 23, 2020) (Lovric, M.J.) (recommending dismissal of Plaintiff's negligence and defamation claims based on the same factual assertions alleged here), *report and recommendation adopted by*, 2020 WL 4049943 (N.D.N.Y. July 20, 2020) (Suddaby, C.J.); *see Wilson v. Neighborhood Restore Dev.*, 18-CV-1172, 2018 WL 2390143, at *3 (E.D.N.Y. May 18, 2018) (dismissing the complaint for lack of subject matter jurisdiction where the plaintiffs alleged claims of breach of contract, breach of warranty of habitability, negligence, personal injury, and fraud); *Lindstrom v. Transervice Logistics Inc.*, 17-CV-6988, 2018 WL 1121598, at *2 (E.D.N.Y. Feb. 27, 2018) (*sua sponte* dismissing the complaint for lack of subject matter jurisdiction, where the plaintiffs alleged claims pursuant to negligence and loss of consortium based on a multi-vehicle automobile accident that occurred on Interstate 78); *West v. Sanchez*, 17-CV-2482, 2017 WL 1628887, at *2 (E.D.N.Y. May 1, 2017) (finding no federal question jurisdiction where the "allegations appear to amount to a state-law personal injury claim"); *White v. Ercole*, 06-CV-1136, 2009 WL 602890, at *5 (S.D.N.Y. Mar. 3, 2009) (negligence claim is a matter of state law).

Moreover, there is no diversity of citizenship sufficient to assert jurisdiction in this case pursuant to 28 U.S.C. § 1332.  (Dkt. No. 1 at 1-2 [alleging that Plaintiff is a citizen of New York State and that Defendants Brink and Story are citizens of New York State]); *see Moore v. Brooklyn Hosp. Ctr.*, 22-CV-4208, 2022 WL 16798230, at *2 (E.D.N.Y. Nov. 8, 2022) ("Because all parties to the action are citizens of New York, diversity of citizenship is lacking, and the requirements of 28 U.S.C. § 1332 are not met.").

11

After carefully reviewing Plaintiff's Complaint and considering other possible bases for jurisdiction, I find that there is no basis for jurisdiction over Plaintiff's Complaint.  As a result, I recommend that Plaintiff's Complaint be dismissed.

## VI.   OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Here, leave to amend would be futile.  As a result, I recommend that Plaintiff's claims be dismissed without leave to amend.  *See Vazquez v.  New York*, 22-CV-0196, 2022 WL

---

[5]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

2390248, at *6 (N.D.N.Y. June 30, 2022) (Hummel, M.J.) (recommending dismissal without leave to amend the plaintiff's defamation claim because, *inter alia*, "plaintiff has not established jurisdiction."), *report and recommendation adopted by*, 2022 WL 3100553 (N.D.N.Y. Aug. 4, 2022) (Suddaby, C.J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) because the Court lacks subject matter jurisdiction; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

---

[6]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: April 20 , 2023
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

2020 WL 4049943
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Theresa A. LOGAN, Plaintiff,

v.

TOWN OF WINDSOR, NEW YORK; New
York Mun. Reciprocal Ins. Co.; Robert Brinks,
Snowplow Truck Driver; and Gregg Story,
Wingman for Snowplow Truck Blade, Defendants.

3:19-CV-1590 (GTS/ML)
|
Signed 07/20/2020

**Attorneys and Law Firms**

THERESA A. LOGAN, Plaintiff, Pro Se, 50 Williams Road,
Windsor, New York 13865.

OF COUNSEL: THOMAS HEGARTY BOUMAN, ESQ.,
COUGHLIN & GERHART, Counsel for Defendants, P.O.
Box 2039, 99 Corporate Drive, Binghamton, New York
13902.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* torts action filed
by Theresa Logan ("Plaintiff") asserting a personal injury
claim against the Town of Windsor, New York, its insurance
company, and two of its employees ("Defendants"), are (1)
United States Magistrate Judge Miroslav Lovric's Report-
Recommendation recommending that Plaintiff's Complaint
be *sua sponte* dismissed without leave to replead for lack
of subject-matter jurisdiction, (2) Plaintiff's Objections to
the Report-Recommendation, (3) Defendants' response to
Plaintiff's Objections, and (4) Plaintiff's reply to Defendants'
response. (Dkt. Nos. 5, 6, 8, 10.) After carefully reviewing
the relevant papers herein, the Court can find no error in
the Report-Recommendation, clear or otherwise. Magistrate
Judge Lovric employed the proper standards, accurately
recited the facts, and reasonably applied the law to those

facts. As a result, the Report-Recommendation is accepted
and adopted in its entirety for the reasons set forth therein. To
those reasons, the Court adds only three points.

First, Plaintiff is respectfully advised that the primary defect
in her Complaint identified by Magistrate Judge Lovric in his
Report-Recommendation is not the untimeliness of her claims
(due to her violation of the applicable statute of limitations)
but the Court's lack of subject-matter jurisdiction over those
claims (due to lack of either federal question jurisdiction or
diversity of jurisdiction). As a result, her argument regarding
the appropriateness of tolling the statute of limitations is
misplaced: the Court cannot toll a limitations period in an
action over which it has no subject-matter jurisdiction.

Second, the Court finds, from the face of Plaintiff's Complaint
and exhibits thereto, that Defendant New York Municipal
Insurance Reciprocal appears to be a citizen of New York
State for purposes of diversity jurisdiction.

Third, in response to Defendants' request (in their response
to Plaintiff's Objections) that the Court admonish Plaintiff
(specifically, that the Court warn her that filing further
frivolous, vexatious, and malicious litigation regarding this
matter may result in the imposition of costs and/or sanctions),
the Court agrees to a certain extent: Plaintiff should be, and
is hereby, cautioned that further unmerited filings by her will
likely result in an Order for her to Show Cause why a Pre-
Filing Order should not be issued against her, enjoining her
from filing any future documents in this Court as a *pro se*
litigant without the leave of the Court.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No. 5) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Complaint (Dkt. No. 1) is **DISMISSED**
without leave to replead for lack of subject-matter
jurisdiction.

**All Citations**

Slip Copy, 2020 WL 4049943

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 16 of 85

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

Only the Westlaw citation is currently available.

<u>For Online Publication Only</u>

United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,

v.

LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

## <u>MEMORANDUM AND ORDER</u>

Joan M. Azrack, United States District Judge

**\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the

prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

## I. BACKGROUND

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

### A. <u>The Bay Shore Mortgage</u>

On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

### B. <u>The Foreclosure Proceeding</u>

**\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and

each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the 🔖RPAPL § 1303 and 🔖§ 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior).

The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

## C. **The Instant Action**

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 🔖12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

**\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 18 of 85

under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

### 2. Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 19 of 85

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata*).

## B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

**\*5** In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since those judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of

the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See 🔖 Trankosook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–Civ–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of Rooker-Feldman met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (See Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, inter alia, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender [r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what Rooker-Feldman forbids— to overturn the New York Supreme Court judgment of foreclosure. See 🔖 Trankosook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the Rooker–Feldman doctrine seeks to avoid."

🔖 ⚠ Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of Rooker-Feldman by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly

discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of Rooker-Feldman.[7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to Rooker-Feldman because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under Rooker-Feldman and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the Rooker–Feldman doctrine fails.

**\*6** Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

### C. *Res judicata*

Alternatively, to the extent the Rooker-Feldman doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of res judicata. Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." 🔖 Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir 1999) (quotation omitted). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has

the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745 F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*. Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata*. First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme

Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl. Exs. I, J) and therefore cannot be relitigated in this Court.

See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata*."); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

**\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 22 of 85

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶¶ 3, 8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc.

v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

## D. Collateral Estoppel

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can

be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." *Yeiser, 535 F. Supp. 2d at 424* (internal citation omitted).

**\*8** "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." *Id. at 424-25* (citing *Coveal v. Consumer Home Mortgage, Inc.,* 2005 WL 2708388, at \*5 (E.D.N.Y. Oct. 21, 2005) ) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Id.* (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra,* plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See *Graham v. Select Portfolio Servicing, Inc.,* 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See *Jasper v. Sony Music Entm't, Inc.,* 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also *Fequiere v. Tribeca Lending,* No. 14-CV-812, 2016 WL 1057000, at \*9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel. [9]

## E. Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se.* Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," *Maduakolam v. Columbia Univ.,* 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See *Kuntz v. Pardo,* 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia,* whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

## F. Leave to Amend

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York,* 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." *Boddie v. N.Y. State Div. of Parole,* No. 08-CV-911, 2009 WL 1033786, at \*5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman*, *res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

## Footnotes

1   Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

2   Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

3   The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

4   To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5   According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

6   Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

7   Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

8   "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit

**Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)**

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 25 of 85

an attack on a judgment" previously issued by the state court. ⚠ Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

9       Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

---

**End of Document**                                             © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by  U.S. v. $6,787.00 in U.S. Currency,  N.D.Ga.,  February 13, 2007

1999 WL 1067841
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,

v.

UNITED STATES OF AMERICA, Defendant.

Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).
|
Nov. 8, 1999.

*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

 **\*1**  Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to  28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See* United States v. Tracy, 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to  21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000. [1]

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of  19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A.  § 1915(e)(2)(B) *Standards*
 **\*2**  The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

### 1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir.1998) (quoting Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes and citation omitted); *see also* Tapia–Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." Tapia–Ortiz, 185 F.3d at 11.

### 2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* Star v. Burlington Police Dep't, 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii)

of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see* Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

> a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii)], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

Gomez v. USAA Federal Sav. Bank, 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* Spencer v. Doe, 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of

official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See* [🚩] *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of [🚩] 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's

Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See* [🚩] *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

2. *Due Process*

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See* [🚩] *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil

forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures— i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing seizure of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

> is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

> is liable to perish or to waste or to be greatly reduced in value by keeping, or

that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90– cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90– cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546) ]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

### 3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "[h]e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative

defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable.

*See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

## Conclusion

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796, these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

## All Citations

Not Reported in F.Supp.2d, 1999 WL 1067841

## Footnotes

1    *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 840706
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

ACCD GLOBAL AGRICULTURE
INC. and Curt Meltzer, Plaintiffs,
v.
Alan P. PERRY and Farm Technologies
Network LLC, Defendants.

No. 12 Civ. 6286(KBF).
|
March 1, 2013.

*MEMORANDUM DECISION & ORDER*

KATHERINE B. FORREST, District Judge.

**\*1** "The district courts of the United States, as [the Supreme Court has] said many times, are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). In most cases, federal jurisdiction lies either in the cause of action arising under federal law, or in the parties' citizenship being diverse-that is, from different states. While it is clear why federal courts should adjudicate cases implicating federal law, the rationale for so-called "diversity jurisdiction" is more historical. The drafters of the Judiciary Act were concerned that state court judges might employ improper local biases in adjudicating large-dollar cases brought by or against people from foreign States. *See id.* ("In order to provide a neutral forum for what have come to be known as diversity cases, Congress also has granted district courts original jurisdiction in civil actions between citizens of different States .... To ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000.") One wonders whether the fear of such local biases continues to justify the ability to access the federal courts, especially in light of the expertise one assumes state courts have over the issues of state law raised in diversity cases—and also in light of the overwhelming number of cases that make it into federal court on diversity grounds. Currently, however, diversity remains an open avenue to the federal courts, and the courts must adjudicate those cases validly brought pursuant to diversity jurisdiction.

That does not mean, however, that federal courts should accept allegations of diversity without investigation-indeed, federal courts are *mandated* to *sua sponte* examine their own jurisdiction at every stage in the litigation:

> Subject-matter jurisdiction can never be waived or forfeited ... [and] if courts become concerned about their own jurisdiction to hear cases, they have an independent *obligation* to ensure that they do not exceed the scope of their jurisdiction, and therefore they *must* raise and decide jurisdictional questions that the parties either overlook or elect not to press.

*Dumann Realty, LLC v. Faust,* 09 Civ. 7651, 2013 WL 30672, at \*1 (S.D.N.Y. Jan.3, 2013) (quotation marks omitted) (citing *Gonzalez v. Thaler,* ——U.S. ——, ——, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012); *Henderson ex rel. Henderson v. Shinseki,* —— U.S. ——, ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011)) (emphasis supplied). This means investigating all aspects of the diversity requirements —not only whether all plaintiffs are completely diverse from all defendants, but also whether the amount in controversy reaches the statutory level.

Here, after having done just that, the Court determines that the requirements for diversity jurisdiction are not met. Plaintiffs ACCD Global Agriculture ("ACCD") and Curt Meltzer sue defendants Alan P. Perry and Farm Technologies Network LLC ("FTN") on claims arising from a soured business collaboration. But almost the entirety of plaintiffs' theory of damages is based on the projected profits lost from the collapse of that collaboration-a collaboration on an unproven business based on sophisticated new science, in an untested foreign market. Such damages require, however, more than the mere assurance from the entity itself that the profits were realizable and realistic—more than the mere *ipsidixit* of "I say I can make that money, therefore I can"—and instead require plaintiffs to eventually establish both the existence and amount of the profits allegedly lost to a reasonable certainty. *See Schonfeld v. Hilliard,* 218 F.3d 164, 172–75

(2d Cir.2000); 🚩 *Ho Myung Moolsan, Co. Ltd. v. Manitou Mineral Water, Inc.,* 07 Civ. 7483, 2010 WL 4892646, at *8 (Dec. 2, 2010); *Pot Luck LLC v. Freeman,* 06 Civ. 10195, 2010 WL 908475, at *3 (S.D.N.Y. Mar.8, 2010).

**\*2** But plaintiffs' complaint here simply asserts that plaintiffs "would [have made] over $1 million per year in profits"—and makes no other proffer whatsoever concerning that allegation. This is insufficient to support a claim for lost profits, even at the motion to dismiss stage. And without those damages, the complaint does not allege an injury in excess of $75,000. Because plaintiffs have alleged absolutely no facts suggesting that their actual recoverable damages are any more than $12,157.08—far below the $75,000 required for diversity jurisdiction to lie—the Court lacks jurisdiction over this action and must dismiss it.

Accordingly, the Court dismisses this action *sua sponte* without prejudice, and denies defendants' motion to dismiss as moot.

BACKGROUND

The following facts are drawn from the First Amended Complaint (the "FAC"), the documents attached thereto, and the documents incorporated therein, and are construed in the light most favorable to plaintiffs. 🚩 *Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of Am., NA,* ––– F.Supp.2d ––––, 2012 WL 6062544, at *1 (Dec. 7, 2012).

### The Parties and the Dispute

Plaintiff ACCD is an agricultural technologies company targeting international farming markets, and specifically China. (FAC ¶ 9.) Plaintiff Meltzer is the president, CEO, and a director of ACCD. (🚩 *Id.* ¶ 2.) Collectively as shareholders, Meltzer formed ACCD with defendant Perry, and two other individuals not involved in this lawsuit. (*Id.* ¶¶ 11, 16, 17.) Perry had worked in "crop production ... farming, agronomy, and soil sciences" for four decades, and served as vice president, treasurer, and a director of ACCD. (*Id.* ¶¶ 10, 11, 16, 18.) Perry was and is also the sole member and owner of defendant FTN—another soil sciences company. (*Id.* ¶¶ 12, 13.)

Meltzer had initially sought to pursue a business enterprise with Perry because of Perry's representations concerning his soil sciences expertise. (*See id.* ¶¶ 10, 13–15.) Specifically, Perry told Meltzer that his and FTN's soil science technology allowed for significant production improvements over regular farming techniques. (*Id.* ¶¶ 13–15.) [1] But Perry "failed to provide supporting data to ACCD" to back up his representations, and—allege plaintiffs—those representations "were not accurate." (*Id.* ¶ 13; *see also id.* ¶¶ 14, 15.) Despite Perry's failure to provide ACCD with data, ACCD still "projected that one farm of 5,000 acres ... with Perry's alleged expertise ... would generate over $1 million per year in profits." (*Id.* ¶ 38.) The FAC contains no factual support or data whatsoever concerning the more-than-$1 million per-year-per-farm profits projected by ACCD.

In May 2011, Meltzer and Perry, and others, formed ACCD through execution of a "Shareholders Agreement." (*Id.* ¶ 11; *see also id.* Ex. 1 (the "Shareholders Agreement").) That agreement contained provisions, *inter alia:*

**\*3** • Requiring that Perry-and the other shareholders—devote "commercially reasonable" time to ACCD (Shareholder Agreement ¶ 7);

• Requiring that Perry license the FTN technology to ACCD for $1.00 per year—until such time as ACCD "accept[s] its initial funding," at which point requiring that Perry sell the technology to ACCD for $1.00, which would then license the technology to FTN for $1.00, provided that FTN use the technology only domestically (*id.* ¶ 8); and

• Requiring that a departing shareholder not compete with ACCD for two years, but permitting Perry to run FTN domestically provided he had no contact with ACCD's customers (*id.* ¶ 20).

By late 2011, however, the relationship between Meltzer and Perry had broken down. Perry allegedly interfered in various ways in ACCD's operations, (*see* FAC ¶¶ 23–27), and eventually resigned in December 2011. (*Id.* ¶ 28.) Due to that resignation, ACCD was denied "Perry's alleged expertise and his involvement and active participation." (*Id.* ¶ 38.) Accordingly, ACCD was alleged denied the projected more-than-$1 million per-year-per-farm profits the Meltzer/Perry collaboration would have generated.

### Facts Relating to Diversity Jurisdiction and Damages

Diversity jurisdiction in cases with domestic parties requires that "the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between ... citizens of different states." 🚩28 U.S.C. § 1332(a)(1). The parties on one side of the litigation must be completely diverse from the parties on the litigation's other side—that is, "no plaintiff can be a citizen of the same state as a defendant."

🚩*Aurora Loan Servs. LLC v. Sadek*, 809 F.Supp.2d 235, 239 (S.D.N.Y.2011).

There is no dispute in this case that all plaintiffs are fully diverse from all defendants—plaintiffs are citizens of New York, and defendants are citizens of Maine. (FAC ¶¶ 1–4.)

There is also no present dispute amongst the parties as to the amount in controversy—defendants do not raise the issue in their pending motion to dismiss. But, the court's "independent obligation to ... raise and decide jurisdictional questions that the parties either overlook or elect not to press,"

🚩*Henderson,* 131 S.Ct. at 1202, requires that the Court examine the FAC's damages allegations on its own.

Plaintiffs' allegations concerning injury, harm, or otherwise suggesting damages, are—*in toto*—the following:

- Perry interfered with ACCD's operations in late 2011 by (1) impeding ACCD's "testing efforts"; (2) failing to pursue business opportunities in Mexico; (3) failing to pursue "citrus greening trials"; (4) "pull[ing]" an employee off an ACCD project; (5) "hav[ing] private conversations with" another employee [2] ; and (6) "fail[ing] to set up private meetings for Meltzer with ... industry leaders." (FAC ¶¶ 23–26.) There is not a single allegation as to how these alleged harms affected ACCD, either in terms of dollar amounts or in terms of practical consequences.

**\*4** • Perry told Meltzer that Meltzer should restructure ACCD, however "Perry was not committed to the" restructuring, and "the restructuring was never completed." (*Id.* ¶¶ 34–35.) What affect this had on ACCD or Meltzer, in terms of dollars, is not alleged.

- Perry and FTN have been competing with ACCD in violation of the Shareholders Agreement. (*Id.* ¶¶ 36–37.) What affect this has had on ACCD or Meltzer, in terms of dollars or in terms of practical consequences, is not alleged.

- Meltzer "advanced" certain sums to Perry totaling $12,157.08 for certain business and personal expenses. Perry never paid Meltzer back. (*Id.* ¶¶ 31–33.)

- Due to Perry's alleged wrongful refusal to continue working with Meltzer and ACCD, ACCD has been unable to achieve its business plans. Specifically, "ACCD [had] projected that one farm of 5,000 acres under its management ... which [was] denied to ACCD by Perry's misconduct ... would generate over $1 million per year in profits to ACCD. Thus, ACCD's damages for its lost profits due to Perry's and FTN's misconduct are well in excess of $1 million." (*Id.* ¶ 38.)

### Procedural History
ACCD and Meltzer initially sued Perry and FTN on August 16, 2012. (ECF No. 1.) Defendants moved to dismiss, but before the Court ruled on that motion, plaintiffs filed the current FAC on October 12, 2012. (ECF No. 11.) Defendants then filed the current motion on October 26. That motion seeks dismissal of five of the FAC's seven counts—all on Rule 12(b)(6) grounds. (*See* ECF No. 13.) Shortly thereafter, on December 12, 2012, this action was transferred from Judge Barbara S. Jones to the undersigned. (ECF No. 17.)

## DISCUSSION

### Legal Standards
"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

🚩*Makarova v. United States,* 201 F.3d 110, 113 (2000);

*see* 🚩*Williams v. Skyline Auto. Inc.,* 11 Civ. 8318, 2012 WL 1965334, at *2 (S.D.N.Y. May 24, 2012). To survive a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, the plaintiff must "allege facts that affirmatively and plausibly" suggest that jurisdiction exists. 🚩*Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir.2011); *see* 🚩*GMA Accessories, Inc. v. Dorfman–Pacific Co., Inc.,* 11 Civ. 3731, 2012 WL 899385, at *3 (March 16, 2012) (dismissal is proper "when the complaint fails to allege sufficient allegations to support subject matter jurisdiction"). The Court draws all well-pleaded facts from the complaint—and the documents attached thereto and incorporated therein

—assumes such facts to be true, and construes reasonable inferences in the plaintiffs' favor. 🚩 *Amidax,* 671 F.3d at 145.

The constitutional and statutory basis for jurisdiction in a diversity case such as this one is found in 🚩 28 U.S.C. § 1332. That section requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 🚩 28 U.S.C. § 1332(a)(1).

### Lost Profits Damages

**\*5** The only injury or damages alleged by the FAC, other than ACCD's lost profits, consists of the $12,157.08 Meltzer allegedly loaned or advanced Perry that Perry never paid back. Otherwise, the only damages articulated by plaintiffs are the "in excess of $1 million" of lost profits based on ACCD's alleged "project[ion] that one farm of 5,000 acres ... would generate over $1 million per year in profits." (*See* FAC ¶¶ 31–33, 38.)

A plaintiff may recover lost profits "only if he can establish both the existence and amount of such damages with reasonable certainty. The damages may not be merely speculative, possible or imaginary ... and must be capable of measurement based upon known reliable factors without undue speculation." 🚩 *Schonfeld,* 218 F.3d at 172 (quotation marks and citations omitted). Thus, a party claiming lost profits must eventually prove that it would have been able to pursue its business venture on the price, cost, and quantity terms it contemplates. *See* 🚩 *Ho Myung Moolsan,* 2010 WL 4892646, at \*8. "A court should be hesitant ... to rely on stated assumptions as to the" operating success of a proposed business venture. *Id.; see Dupont Flooring Sys., Inc. v. Discovery Zone, Inc.,* 98 Civ. 5101, 2004 WL 1594629, at \*7 (S.D.N.Y. July 14, 2004) ("Courts repeatedly have rejected claims for lost profits that rest on a series of assumptions and projections") (quotation marks omitted; collecting cases); *Coastal Aviation. Inc. v. Commander Aircraft Co.,* 937 F.Supp. 1051, 1070 (S.D.N.Y.1996) ("To award plaintiff lost profits based on the unproven assumption that it would have [succeeded in its business ventures] would unjustly reward plaintiff rather than make it whole.")

Moreover, "evidence of lost profits from a new business venture receives greater scrutiny because there is no track record upon which to base an estimate." 🚩 *Schonfeld,* 218

F.3d at 172. Thus, "[p]rojections of future profits based upon a multitude of assumptions that require speculation and conjecture and few known factors do not provide the requisite certainty." *Id.; see Robin Bay Assocs., LLC v. Merrill Lynch & Co.,* 07 Civ. 376, 2008 WL 2275902, at \*7 (S.D.N.Y. June 3, 2008) ("the obvious reason [is] that there does not exist a reasonable basis of experience upon which to estimate lost profits"). Indeed, for 100 years, the New York Court of Appeals has been "reluctant" to award lost profits in cases involving new business ventures. *See* 🚩 *Cramer v. Grand Rapids Show Case Co.,* 223 N.Y. 63, 119 N.E. 227, 228–29 (N.Y.1918). [3]

Finally, if sought on breach of contract claims, [4] plaintiff must additionally eventually prove that "lost profit damages," specifically, "were within the contemplation of the parties when the contract was made." 🚩 *Schonfeld,* 218 F.3d at 172; *Robin Bay,* 2008 WL 2275902, at \*7 ("To recover lost profits the plaintiff must show both that the alleged loss is capable of proof with reasonable certainty and that the damages were fairly within the contemplation of the parties.").

**\*6** "Though courts often address the issue of lost profits at the summary judgment stage, New York courts have dismissed claims for lost profits where the pleadings suggest that an award of lost profits would require an unreasonable level of speculation." *Robin Bay,* 2008 WL 2275902, at \*7 (on motion to dismiss, dismissing claims for lost profits arising from proposed construction of a casino in St Croix because "court would have to assume" that plaintiff would obtain funding to purchase land, secure proper licenses, complete construction, and operate the business profitably, when the industry was "in its infancy"); [5] *see also Pot Luck,* 2010 WL 908475, at \*3 (on motion to dismiss, dismissing claims for lost profits arising from proposed distribution of film in certain regions because such claims would require the court to assume the existence of markets in those regions, the terms of any distributorship agreements in those regions, the efforts of retained distributors, and the effectiveness of those efforts); *Calip Dairies, Inc. v. Penn Station News Corp.,* 262 A.D.2d 193, 194, 695 N.Y.S.2d 70 (1st Dep't 1999) ("The cause of action for lost profits was also properly dismissed [on motion to dismiss under N.Y. C.P.L.R.] because the profits alleged to have been lost could not be determined with a reasonable degree of certainty."); *Lama Holding Co. v. Smith Barney Inc.,* 215 A.D.2d 314, 315, 627 N.Y.S.2d 33 (1st Dep't 1995; *676 R.S.D. Inc. v. Scandia Realty,* 195 A.D.2d 387, 387, 600 N.Y.S.2d 678 (1st Dep't 1993).

There is not a single allegation in the FAC in the case at bar suggesting that ACCD would ever have been profitable in China or the other international farming markets the FAC alleges were its targets. (*See* FAC ¶ 9.) As a preliminary matter, the Court notes that such allegations-well-pleaded, and with support—should not have been or be difficult for plaintiffs to produce. Indeed, it is *plaintiffs'* business whose profits are alleged to have been destroyed. It is there *plaintiffs* who should have the records and models and projections—without any need for discovery, or any other process—to support any allegations that ACCD would have made the many millions in lost profits that plaintiffs claim.

But there is no allegation that ACCD could acquire land in China on which to operate any farms; nor that ACCD could acquire any Chinese legal rights or licenses to operate the farms; nor that technologically-advanced farming in China is even possible, practically or legally; nor that ACCD could build the farms; nor that ACCD could find laborers with the necessary experience with technologically-advanced farming; nor that ACCD could find laborers at all; nor that the FTN farming techniques would be effective.

Nor is there any well-pleaded allegation even that ACCD could operate the farms profitably. Indeed, there is no allegation that ACCD or Meltzer had ever been successful in any venture similar to ACCD. And while the FAC alleges that Perry told Meltzer that Perry had had success in prior similar ventures, the FAC *specifically alleges that Perry was lying when he made those representations.* (*See* FAC ¶¶ 13–15.) It seems odd to accuse an individual of lying about his credentials and, in the very next breath, claim damages based—essentially—solely on the withheld expertise of that individual. Likewise, the Court cannot—and will not—assume the effectiveness and profitability of

unproven farming techniques that plaintiffs themselves allege were not as effective as they were represented to be.

**\*7** In the absence of well-pleaded allegations supporting any of the facts listed above, "there is simply no basis for the court to determine lost profits at this point or any other stage of the litigation because such a calculation would require a high degree of speculation." *Robin Bay,* 2008 WL 2275902, at \*8. Indeed, "a high degree of speculation" puts it lightly.

Plaintiffs' damages claims based on ACCD's alleged lost profits are therefore dismissed. The FAC is thus left with a claim for $12,157.08 in money Meltzer advanced Perry, which Perry never repaid. But this is below the $75,000 threshold required by 28 U.S.C. § 1332(a). Accordingly, the Court lacks subject matter jurisdiction and must dismiss this action.

CONCLUSION

For the reasons stated above, plaintiffs' FAC is dismissed. This dismissal is *without prejudice,* and plaintiffs are hereby granted leave to file a second amended complaint not later than March 11, 2013.

Defendants' motion to dismiss is denied as moot.

The Clerk of the Court is directed to terminate the motion at ECF No. 12.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 840706

**Footnotes**

1   Perry allegedly told Meltzer that his and FTN's technology provided (1) "at least a 30% increase in production for nearly every crop ... for 15 years"; (2) "crop yields of 20% to 100% over the traditional N, P, K fertilizer program; and (3) "high end yield increases (of up to over 120%) for 11 different crops." (FAC ¶¶ 13–15.)

2   The content of those conversations is not alleged.

3    "I have pointed out the limited business experience of plaintiffs, the fact that the enterprise was an adventure in a locality where neither one of them had before been engaged in business. No doubt the plaintiffs entertained hope that the business venture upon which they were about to embark would prove successful. Such expectation was evidently based upon a consideration of the resident population of the city of Amsterdam, the business activity of the residents of that city, and the number and character of competitors in the same general line of business. Plaintiffs, however, had no assurance that the venture would not prove to be a failure. At the time the contract was made they had the lease of a vacant unfinished store. They had not as yet purchased goods, placed goods on sale, or secured one customer. They had before them the labor of building up a new business. Nevertheless, the courts below have held that plaintiffs may recover for the breach of the contract such an amount of profits as they would have made had they not been prevented from starting in business, such damages not to be based upon a business theretofore carried on, but measured by profits during a period of time corresponding to the period of interruption one year later. Therein material error was committed.

...

A distinction exists between the interruption of an established business and a new venture. The owner of an established business may have it in his power to establish with reasonable certainty the amount of capital invested, the monthly and yearly expenses of operating his business, and the daily, monthly, or yearly income he derived from it for a long time prior thereto and for the time during which the interruption of which he complains continued, thereby furnishing a reasonably correct estimate of the nature of the legal injury and the amount of damages which resulted therefrom. While evidence of such facts may be admissible they must not be uncertain or problematical. The requirement imposed upon one whose business has been established and interrupted cannot be enforced as to him and made less stringent to one embarking in a new business who cannot furnish data of past business from which the fact that anticipated profits would have been realized can be legally deduced." 🚩 119 N.E. at 228–29 (internal citations omitted).

4    Plaintiffs' FAC lists seven counts—some of which are plead "in the alternative" from each other—including one for breach of contract. Because no count includes a statement of the damages arising from that count, it is impossible for the Court to determine what damages claims are linked to which legal counts.

5    Indeed, the *Robin Bay* case is particularly instructive because there—like in the case at bar—the party against whom lost profits were claimed acted in the venture as an adviser without whom the venture could not proceed for lack of the venturers' expertise. Moreover, like this case, the claims in that case arose under contract, negligence, and fiduciary duty theories. *See* 2008 WL 2275902, at ——1–2, 7–8.

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    6

2013 WL 30672
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

DUMANN REALTY, LLC, Profitechnic Limited,
LLC, Lawrence Luk and Mac Luk, Plaintiffs,
v.
Frederick FAUST, Defendant/Counterclaim Plaintiff,
v.
Dumann Realty, LLC, Richard Du and
Mac Luk, Counterclaim Defendants.

No. 09 Civ. 7651(JPO).
|
Jan. 3, 2013.

*MEMORANDUM AND ORDER*

J. PAUL OETKEN, District Judge.

**\*1** Dumann Realty, LLC ("Dumann" or "the LLC"), Profitechnic Capital Limited ("Profitechnic"), Lawrence Mac ("Mac"), and Mac Luk (together, "Plaintiffs") brought this action against Dumann member Frederick Faust ("Faust" or "Defendant") asserting nine claims under New York State Law, including breach of Dumann's Operating Agreement and breach of the common law duty of good faith and fair dealing. Faust has filed several counterclaims against Plaintiffs, also under New York law.

Defendant has filed a motion for summary judgment, which is now fully briefed. However, this Court has determined that it lacks subject matter jurisdiction over this matter, and thus must dismiss this case *sua sponte,* without reaching the merits of Defendant's motion.

## I. Subject Matter Jurisdiction

"The district courts of the United States ... are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.' " *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). "Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. [J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003) (internal quotation marks and citations omitted; alteration in original).

"Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Gonzalez v. Thaler,* ––– U.S. ––––, ––––, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012). Moreover, if courts become concerned about their jurisdiction to hear cases, they have "an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Hernandez ex rel. Hernandez v. Shinseki,* ––– U.S. ––––, ––––, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) (citation omitted); *see also Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (stating that "a challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte* by the district court" (citation omitted)). To be sure, if it is determined late in the life of a case that no subject matter jurisdiction exists, "many months of work on the part of the attorneys and the court may be wasted." *Henderson,* 131 S.Ct. at 1202. This, however, is a modest price to pay for the continued preservation of federalism. *Accord Mansfield, C. & L.M. Ry. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884) (explaining that the rules governing subject matter jurisdiction "spring[ ] from the nature and limits of the judicial power of the United States" and are therefore "inflexible and without exception").

## II. Diversity Jurisdiction in Cases Involving Limited Liability Companies

**\*2** In their Second Amended Complaint, Plaintiffs allege that "[t]his Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of each of the parties and the amount in controversy." (Second Amended Complaint at ¶ 11.) Under 28 U.S.C. § 1332(a) (1), federal diversity jurisdiction exists where the matter is between "citizens of different States." Since *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806), it has been settled law that there

must be complete diversity between all plaintiffs and all defendants.

A Limited Liability Company ("LLC") is completely diverse from opposing parties only if *all* of the members of the LLC are citizens of different states than *all* opposing parties. *See* ⚑ *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,* 213 F.3d 48, 51 (2d Cir.2000) ("defendants Bedford Partnership and Bedford LLC are, for diversity purposes, citizens of Florida because both entities have Florida members"); *Receivables Exch., LLC v. Hotton,* No. 11 Civ. 0292(JS)(WDW), 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011) (explaining that, "for diversity purposes, an LLC is a citizen of every state that its members are citizens of" (citations omitted)); *Castillo Grand LLC v. Sheraton Operating Corp.,* No. 09 Civ. 7197(RPP), 2009 WL 4667104, at *1 (S.D.N.Y. Dec.9, 2009) ("For purposes of assessing diversity jurisdiction, an unincorporated entity such as a partnership or a limited liability company is deemed to be a citizen of all states of which its partners or members are citizens." (citation omitted)); *cf.* ⚑ *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (holding that, in the context of limited partnerships, citizenship of limited partners had to be taken into account to determine diversity of citizenship among the parties).

In his recent submission to this Court, Richard Du avers that that, as of the filing of the initial Complaint on September 2, 2009, two of the original three members, Du and Luk, were both citizens of New York, while Faust, who is both an original member of Dumann and the defendant in this action, was a domiciliary of Pennsylvania. (Dkt. No. 96 ("the Du Affidavit") at ¶¶ 3, 5–6.) [1] Du states, however, that Faust "resigned as a member" of the LLC on March 18, 2009, over five months before the initial Complaint was filed. (Du Affidavit at ¶ 2.) [2] This begs the question whether Faust must be considered a member of Dumann for the purpose of determining whether the parties are completely diverse.

## III. State Law and LLC Membership

The question of whose citizenship constitutes part of the LLC's citizenship is ultimately governed by the law of the state of incorporation. This is illuminated by *CR Holding Company, LLP v. Campbell,* No. 11 Civ.2051(JWL), 2011 WL 2357649, at *3 (D.Kan. June 3, 2011), a case whose facts are remarkably similar to this case. *Campbell* concerned a dispute between several limited partnerships and their former

partner, the defendant Campbell. The sole remaining partner, Renkemeyer, was a citizen of Kansas, while Campbell was a citizen of Missouri. In his motion to dismiss for lack of subject matter jurisdiction, Campbell argued

> **\*3** that diversity is not complete because [Campbell] remains a partner of each of the plaintiff entities such that the plaintiff entities are citizens of both Kansas and Missouri, thereby destroying complete diversity ... Plaintiffs, however, contend that Mr. Renkemeyer is the sole partner of each entity because Mr. Campbell has either withdrawn from the partnerships or, under the circumstances, should be deemed dissociated ....

*Id.* at *1.

In determining whether subject matter jurisdiction existed, Judge Lungstrum looked to the Kansas state law on partner withdrawal from limited partnerships, which provided that withdrawal was impermissible unless it was provided for by the partnership agreement. *Id.* at *2. "[B]ecause defendant is not permitted to withdraw as a limited partner of Renkemeyer Campbell LP under the agreement itself and, thus, by statute ...," Judge Lungstrum held, "defendant remains a limited partner .... That entity, then, is a citizen of both Kansas and Missouri, thereby destroying complete diversity." *Id.* at *3. In other words, despite Campbell's attempted withdrawal, the LLC remained a citizen of Campbell's place of citizenship.

Though less squarely on point, *Tri–County Metropolitan Transportation District of Oregon v. Butler Block, LLC,* No. 08 Civ. 259(AA), 2008 WL 2037306 (D.Or. May 7, 2008), is also informative. In *Butler Block,* Judge Aiken wrestled with the question whether an Oregon plaintiff was completely diverse from the defendant, a parent LLC composed of a California citizen and a child LLC with one member, an Oregon citizen. The defendant LLC argued that its Oregon LLC member did not destroy complete diversity, because the child LLC had been administratively dissolved under Oregon law for failure to pay its fees. *Id.* at *2. However, Judge Aiken held that neither Delaware state law [3] nor the parent LLC agreement permitted withdrawal of a member due to administrative dissolution. Further, "under Delaware law," as

under New York law, "unless an LLC agreement provides otherwise, a member may not resign from a limited liability company prior to the dissolution and winding up of the limited liability company." *Id.* at *2 (internal quotation marks and citation omitted). Thus, even if Oregon no longer recognized the existence of the child LLC, the child LLC continued to exist under Delaware law, and the citizenship of its member destroyed diversity. *Butler Block,* then, underscores the principle laid out in *Campbell:* the law of the state of incorporation plays a central role in the determination of whether complete diversity can exist between an LLC and an opposing party.

Armed with *Campbell* and *Butler Block,* this Court can now turn to the case at hand. It is undisputed that Dumann, the LLC, was formed in New York and is governed by New York Limited Liability Company Law ("NYLLCL"). (*See* Dkt. No. 85, Ex. A ("Operating Agreement") at III § 1 ("Unless specifically set forth otherwise in the Articles of Organization or by amendment thereto, management of this Company shall be vested in the members, who shall be subject to all of the rights, duties, privileges and liabilities of the Managers, as set forth in the New York Limited Liability Company Law .") NYLLCL § 606(a) provides in relevant part:

> **\*4** A member may withdraw as a member of a limited liability company only at the time or upon the happening of events specified in the operating agreement and in accordance with the operating agreement. Notwithstanding anything to the contrary under applicable law, unless an operating agreement provides otherwise, a member may not withdraw from a limited liability company prior to the dissolution and winding up of the limited liability company.

*See also Klein v. 599 Eleventh Ave. Co.,* 14 Misc.3d 1211(A), at *3 (N.Y.Sup.2006) (explaining that "a member may withdraw from a limited liability company only as provided in its operating agreement. If the operating agreement is silent, a member may not withdraw prior to the dissolution of the company." (citations omitted)).

The Operating Agreement contains the following rules about withdrawal:

> A member may withdraw as a member of this Company with the vote or written consent of at least two-thirds in interest of the members, other than the member who proposes to withdraw as a member. If such consent is not given, a member may withdraw upon not less than six months prior written notice to this Company, provided such withdrawal does not breach this Operating Agreement, and the New York Limited Liability Company Law or any other contractual obligation between such proposed withdrawing member and this company or its other members. Should such breach occur, then the withdrawing member may be liable for damages as a result thereof.

(Operating Agreement at III, § 10.)[4] Read together, the NYLLCL and the Operating Agreement do not permit member withdrawal, unless (1) two-thirds consent is given or (2) the withdrawal occurs after six months' notice.

Here, Faust did not obtain two-thirds consent to withdraw. Nor did he provide six months' notice before withdrawal; indeed, this is the *very basis* of Dumann's contention that Faust breached the membership agreement. (*See* Second Amended Complaint at ¶¶ 17–18.)[5] Because Faust has not withdrawn under one of the two methods enumerated in the Operating Agreement, his "resignation" from Dumann was, in short, ineffective.[6] Thus, when Plaintiffs brought this suit, Dumann's citizenship for diversity jurisdiction purposes was both New York and Pennsylvania. Pennsylvania, in other words, finds itself "on both sides of the 'v.' sign" in this matter, *Saavedra v. Boeing Co.,* 464 F.Supp.2d 770, 771 (N.D.Ill.2006), meaning that diversity of citizenship is incomplete.

The infirmity in this Court's subject matter jurisdiction over this case is a subtle one, which may explain why it has gone unnoticed throughout much of the litigation. Nevertheless,

that infirmity divests this Court of the power to adjudicate this case as a matter of federal law.

**IV. Conclusion**

For the foregoing reasons, this case is DISMISSED *sua sponte* for lack of subject matter jurisdiction. The Clerk of the Court is directed to terminate the case and all pending motions.

**\*5**  SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 30672

---

### Footnotes

1    While the Second Amended Complaint alleges that Dumann has its "principal place of business" in New York State, that fact (as to an LLC) is entirely irrelevant to diversity jurisdiction. The Second Amended Complaint does not enumerate the citizenship of the members of Dumann at the time the suit was filed.

On December 6, 2012, this Court issued an issued an Order to Show Cause why Plaintiff's Second Amended Complaint should not be dismissed for lack of subject matter jurisdiction ("the Order"). The Order directed Plaintiffs to both "enumerate every Member of the LLC as of the original date of this action's filing, and ... specify the *citizenship* of each Member." *Dumann Realty LLC v. Faust,* No. 09 Civ. 7651(JPO), 2012 WL 6135020, at \*1 (S.D.N.Y. Dec.6, 2012). On December 19, 2012, Plaintiffs filed an affidavit by Richard Du. On December 28, 2012, Defendant filed an affidavit by Anthony R. Molé in reply. (Dkt. No. 97 ("Molé Affidavit").)

2    As Defendant rightly notes (*see* Molé Affidavit at ¶¶ 4–7), the Du Affidavit's contention that Faust "resigned as a member" is problematic on its own terms. Du relies on paragraph 23 of Faust's Answer to the Second Amended Complaint for the proposition that Faust resigned from Dumann; however, that paragraph states not that Faust resigned, but that "on or about March 18, 2009, by letter, Faust indicated his *desire* to resign from Dumann and requested that Dumann's remaining members, Du and Luk, consent to his resignation." (Du's Affidavit, Ex. A at ¶ 23 (emphasis added).)

3    The defendant LLC was a Delaware LLC governed by Delaware law. *Id.* at \*1.

4    Moreover, the Operating Agreement "has (no) specified date of dissolution ... unless sooner dissolved pursuant to this Agreement or pursuant to the provisions of the [NYLLCL]." (*Id.* at § II, 7.)

5    As Defendant's counsel notes, this puts Plaintiff "in a situation where any argument made in an attempt to support diversity subject matter jurisdiction would be counterproductive to their claim." (Molé Affidavit at ¶ 9.)

6    Moreover, Dumann sued Faust within six month of his resignation, meaning that the period during which the Operating Agreement anticipated Faust to be liable for consequential damages of the breach was still in effect. This underscores that, at the time this Complaint was filed, Faust was a member of the LLC for purposes of diversity jurisdiction.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2124365
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Luis GONZALEZ and Sonia Gonzalez, Plaintiffs,

v.

OCWEN HOME LOAN SERVICING, Sand
Canyon Corporation, Dale M. Sugimoto, Fabiola
N. Camperi, Matthew A. Engel, William S. Smith,
Leopold & Associates, Option One Mortgage
Corporation, American Home Mortgage Service,
Inc., Deutsche Bank National Trust Company,
Soundview Home Loan Trust 2005–OPT3, Hunt
Leibert Jacobson PC, Benjamin T. Staskiewicz, S.
Bruce Fair, Esq., Jon Doe, Jan Doe, Hinshaw &
Culbertson, LLP, Valerie Nicole Doble, Defendants.

Civil Action No. 3:14–CV–53 (CSH).
|
Signed May 6, 2015.

**Attorneys and Law Firms**

Sonia Gonzalez, East Windsor, CT, pro se.

Valerie N. Doble, Hinshaw & Culbertson, LLP, Boston, MA,
for Defendants.

*RULING ON PLAINTIFFS' MOTION TO
REARGUE AND REQUEST FOR JUDGE
TO RECONSIDER/ARTICULATE [Doc. 15]*

HAIGHT, Senior District Judge:

### I. *INTRODUCTION*

**\*1** *Pro se* Plaintiffs Luis Gonzalez and Sonia Gonzalez
brought this action against various defendant mortgage
companies, banks, and individuals (counsel to and executives
for said mortgage companies and banks), alleging violations
of the United States Constitution and the United Nations
Declaration on the Rights of Indigenous Peoples, "banking
fraud," and conspiracy with respect to the foreclosed
mortgage of 54 Abbe Road, East Windsor, Connecticut (the
"East Windsor Property").[1] On February 25, 2015, the
Court entered an "Order of Dismissal" [Doc. 13], dismissing
Plaintiffs' action with prejudice. *See Gonzalez v. Ocwen*

*Home Loan Serv.,* 3:14–CV–53 (CSH), —— F.Supp.3d ——,
2015 WL 778432 (D.Conn. Feb. 25, 2015).[2] In particular,
the Court dismissed the action in its entirety because the
Court determined that it lacked subject matter jurisdiction
and the complaint failed to set forth any claims upon which
relief may be granted in that it contained only frivolous
or legally impossible claims.[3] 2015 WL 778432, at *4–
11. Furthermore, the Court found that Plaintiffs failed to
serve Defendants with process (the summons and complaint),
Fed.R.Civ.P. 4(c)(1), 4(m), and failed to prosecute the
action for more than six months, Fed.R.Civ.P. 41(b), both
constituting alternative grounds for dismissal.[4] *Id.,* at *11–
14.

### II. *DISCUSSION*

Pending before the Court is Plaintiffs' "Motion to Reargue and
Request for Judge to Reconsider/Articulate" [Doc. 15]. The
Court construes this *pro se* motion as one for reconsideration
and/or oral argument with respect to the Court's "Order
of Dismissal" of Plaintiffs' Amended Complaint [Doc. 13].
The standard for granting a motion for reconsideration "is
strict, and reconsideration will generally be denied unless the
moving party can point to controlling decisions or data that
the court overlooked—matters, in other words, that might
reasonably be expected to alter the conclusion reached by
the court." 🚩 *Shrader v. CSX Transp., Inc.,* 70 F.3d 255,
257 (2d Cir.1995); *accord Mir v. Shah,* 569 F. App'x 48, 50
(2d Cir.2014) (same). *See also* 🚩 *Virgin Atl. Airways, Ltd. v.
Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992), *cert.
denied,* 506 U.S. 820 (1992) ("The major grounds justifying
reconsideration are 'an intervening change of controlling law,
the availability of new evidence, or the need to correct a
clear error or prevent manifest injustice.' ") (quoting 18 C.
Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*
§ 4478 at 790); *Kolel Beth Yechiel Mechil of Tartikov, Inv. v.
YLL Irrevocable Trust,* 729 F.3d 99, 104 (2d Cir.2013) (same)
(citing 🚩 *Virgin Atl. Airways,* 956 F.2d at 1255).

"It is well-settled that a motion for reconsideration is 'not
a vehicle for relitigating old issues, presenting the case
under new theories, securing a rehearing on the merits, or
otherwise taking a 'second bite at the apple.' " *Driessen v.
Royal Bank Int'l,* No. 3:14–CV–01300, 2015 WL 881205, *1
(D.Conn. Mar. 2, 2015) (quoting 🚩 *Analytical Surveys, Inc.
v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir.2012)). Put

simply, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Weiming Chen v. Ying–Jeou Ma,* 595 F. App'x 79, 80 (2d Cir.2015) (citing *Shrader,* 70 F.3d at 257).

**\*2** The Court has carefully reviewed Plaintiffs' submitted list of assertions in support of their motion for reconsideration. Pursuant to the Second Circuit's strict standard for reconsideration, the Court finds no adequate grounds— no controlling authority or factual information that the Court overlooked—to warrant reconsideration of its Order of Dismissal. Rather, Plaintiffs have once again set forth allegations in an attempt to challenge the validity of the state court foreclosure of the East Windsor Property, upon which Deutsche Bank, as Trustee, foreclosed the mortgage and took title to the property. The requested reconsideration and/or "reargument" (oral argument before the Court) would thus not reasonably be expected to alter the Court's ruling.

The only potentially "new" evidence or data Plaintiffs presented on their motion for reconsideration included: (1) two letters from Howard F. Pitkin ("Pitkin letters"), the Banking Commissioner for the State of Connecticut, regarding a "National Ocwen Settlement" (herein "Settlement") entered between the Consumer Financial Bureau and Ocwen Home Loan Servicing ("Ocwen") with respect to various loans serviced by Homeward Residential Holdings, LLC (previously known as American Home Mortgage Servicing, Inc. or AHMSI); and (2) a photocopy of a check from "Ocwen Borrower Payment Account QSF" payable to Luis Gonzalez for $1,168.44 (dated 12/6/2014). Doc. 15, at 4–7. The Pitkin letters indicate that they relate to a mortgage loan with respect to "54 Abbe Road, E. Windsor, CT" and inform the "Borrowers" (recipients) that they "may be eligible to receive a payment of at least $700.00 as a part of the National Ocwen Settlement" because they "had a loan serviced by Homeward Residential Holdings LLC ... and lost [their] primary residence to foreclosure between January 1, 2009 and December 31, 2012."[5]

In presenting the Pitkin letters and/or the National Settlement payment to Luis Gonzalez, Plaintiffs once again seek to challenge the state court's final judgment of foreclosure. As stated in the Order of Dismissal, pursuant to the Rooker–Feldman doctrine, this Court remains barred from reconsidering that foreclosure judgment. *See, e.g.,* *Swiatkowski v. Bank of America, NT & SA,* 103 F. App'x 431, 432 (2d Cir.2004) (affirming district court's "holding

that under the Rooker–Feldman doctrine, the [district] court lacked subject matter jurisdiction: even reading the complaint liberally, ... [plaintiffs'] lawsuit was effectively seeking to re-litigate a judgment of foreclosure entered against them by the state court"); *Ford v. U.S. Dep't of Treasury Internal Revenue Serv.,* 50 F. App'x 490, 491 (2d Cir.2002) (affirming district court's dismissal of plaintiff's complaint for lack of subject matter jurisdiction under the Rooker–Feldman doctrine where plaintiff's claims asserted alleged fraud and the statute of limitations with respect to the state court foreclosure judgment; Second Circuit held such claims were "inextricably intertwined with the state court's underlying foreclosure judgment," so that, in "seek[ing] a declaration that the foreclosure judgment [was] void," plaintiff was effectively seeking a "reversal of the state court foreclosure judgment"); *Billie v. Aurigremma,* No. 3:13–cv–1432 (JBA), 2013 WL 6331358, at \*2 (D.Conn. Dec. 5, 2013) ("any claims contesting the validity of the state court foreclosure judgment are precluded by the Rooker–Feldman doctrine"); *Andrews v. Citimortgage, Inc.,* No. 14–CV–1534(JS)(AKT), 2015 WL 1509511, at \*5 (E.D.N.Y. Mar. 31, 2015) ("in the Second Circuit, any attack on a judgment of foreclosure is ... barred by the Rooker–Feldman doctrine" (citation omitted) (collecting cases). In addition, the Rooker–Feldman doctrine also bars challenges to the state court foreclosure judgment as "obtained fraudulently." *Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423, 427 (2d Cir.2014) (*per curiam* ).

**\*3** In the case at bar, Plaintiffs lost in state court regarding foreclosure of their property, complain of injuries caused by that state court judgment, invite federal district court review and rejection of the state court foreclosure, and commenced this federal suit after the state court judgment was rendered. *See, e.g.,* *McKithen v. Brown,* 481 F.3d 89, 97 (2d Cir.2007) (setting forth "four requirements for the application of Rooker–Feldman" doctrine). This Court therefore lacks subject matter jurisdiction over the present action pursuant to the Rooker–Feldman doctrine.[6]

No evidence presented by Plaintiffs for reconsideration contradicts the Court's threshold finding that it lacks subject matter jurisdiction. Absent such jurisdiction, the Court is barred from proceeding in this matter and must dismiss. *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action ."). *See also Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir.1983) ("It is common ground that in our federal system of limited jurisdiction any

party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, *dismissal is mandatory.*") (emphasis added).

### III. *CONCLUSION*

In sum, Plaintiffs have presented no legal authority or new evidence which would reasonably alter the prior Order of this

Court [Doc. 13], which directed dismissal of the action with prejudice. The Court therefore DENIES Plaintiffs' motion for reconsideration [Doc. 15].

It is SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2124365

---

## Footnotes

1     Plaintiffs also included two defendants with the generic names of "Jon Doe" and "Jan Doe." It is unclear whom Plaintiffs sought to represent with these designations.

2     The full facts and circumstances of the case are set forth in the February 25 Order, familiarity with which is assumed. *See also Gonzalez v. Option One Mortg. Corp.,* No. 3:12–CV–1470 (CSH), 2014 WL 2475893, at *1 (D.Conn. June 3, 2014) (dismissing prior federal case in which Plaintiffs challenged foreclosure on East Windsor Property); *Gonzalez v. United States,* No. 3:13–CV–650 (CSH), 2014 WL 3738179, at *1 (D.Conn. July 29, 2014) (same).

3     With respect to lack of subject matter jurisdiction, Plaintiffs' claims presented no grounds for "federal question" jurisdiction, 28 U.S.C. § 1331; and there was also no complete "diversity of citizenship" in that Plaintiffs and

multiple defendants were all citizens of Connecticut at the commencement of the action. *See* 🚩28 U.S.C. ¶ 1332(a) ("[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is *between ... citizens of different States* ") (emphasis added).

Plaintiffs' claims were also barred by the "Rooker–Feldman" doctrine in that Plaintiffs sought to challenge final state court judgments, which foreclosed on the East Windsor property and passed title to Deutsche Bank. *See* 🚩*Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923); 🚩*D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983). For the Rooker—Feldman doctrine to apply, (1) a plaintiff must have lost in state court; (2) his injury must have been caused by a state court judgment; (3) he must have invited federal review of that state court judgment; and (4) the state court judgment must have been entered before his federal suit commenced. *See* 🚩*McKithen v. Brown,* 481 F.3d 89, 97 (2d Cir.2007). This Court therefore lacked jurisdiction to consider Plaintiffs' claims.

4     The Court clarified that it "would ordinarily grant Plaintiffs a brief additional period within which to effect proper service before dismissing the complaint without prejudice," but "granting Plaintiffs additional time for service would be futile because their Complaint is fatally defective in that it sets forth 'frivolous' claims which cannot be remedied by amendment." 2015 WL 778432, at *12. Similarly, the Court found "no point" in providing Plaintiffs with additional days to serve the summons and complaint because the Amended Complaint "sets forth exclusively frivolous and/or legally impossible claims." *Id.,* at *13.

5     Pursuant to Federal Rule 401 of Evidence, the Court takes judicial notice of the "Consent Judgment" which gave rise to the National Ocwen Settlement payments. *See Consumer Fin. Protection Bureau v.*

*Ocwen Fin., Corp.,* No. 1:13–cv–2025 (RMC) (D.D.C. Feb. 26, 2014), Doc. 12. Pursuant to Exhibit B of that judgment, "[t]he purposes of the payments ... are remedial and relate to the reduction in the proceeds deemed realized by borrowers for tax purposes from the foreclosure sale of residential properties owned by the borrowers allegedly resulting from the allegedly unlawful conduct of Ocwen." *Id.,* Doc. 12–2, at ¶ 7. *See also* https:// nationalocwensettlement.com (website for National Settlement, declaring that the Consent Judgment addresses Ocwen's alleged "misconduct during the mortgage servicing process.") (visited May 4, 2015). It thus follows that the letters presented by Plaintiffs do not indicate that foreclosure on the East Windsor Property was wrongful or invalid. Rather, they address possible errors in mortgage servicing by Ocwen or its subsidiaries. Either reading of the letters, however, does not alter the Court's finding that any such challenge to the state court foreclosure judgment is barred by the Rooker–Feldman doctrine.

6    The Court also notes that Plaintiffs have presented no data that the Court overlooked in finding that neither "federal question" nor "diversity of citizenship" subject matter jurisdiction exists in this action. *See* 28 U.S.C. §§ 1331, 🚩1332(a), respectively.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 45 of 85

Logan v. Town of Windsor, New York, Not Reported in Fed. Supp. (2020)

2020 WL 1950860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Theresa A. LOGAN, Plaintiff,

v.

TOWN OF WINDSOR, NEW YORK; New York
Municipal Reciprocal Insurance Company; Robert
Brinks, Snowplow Truck Driver; and Gregg Story,
Wingman for Snowplow Truck Blade, Defendants.

3:19-CV-1590 (GTS/ML)
|
Signed 04/22/2020
|
Filed 04/23/2020

**Attorneys and Law Firms**

THERESA A. LOGAN, Plaintiff, Pro Se, 50 Williams Road,
Windsor, New York 13865.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1**  The Clerk has sent this *pro se* Complaint together with
an application to proceed *in forma pauperis* and motion to
appoint counsel filed by Theresa A. Logan ("Plaintiff") to the
Court for review. (Dkt. Nos. 1, 2, 3.) For the reasons discussed
below, I grant Plaintiff's *in forma pauperis* application (Dkt.
No. 2), deny Plaintiff's motion to appoint counsel (Dkt. No.
3), and recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed without leave to amend.

## I. PROCEDURAL HISTORY

On May 18, 2018, Plaintiff commenced a *pro se* action in
the Northern District of New York 3:18-CV-0593 (GTS/DEP)
("*Logan I*") against the Town of Windsor, Robert Brinks,
Gregg Story, and New York Municipal Insurance Reciprocal
("Defendants") asserting claims of common law assault and
battery based on injuries that she sustained on or about March
7, 2011, when she was allegedly struck by debris thrown in
her direction by a snowplow operated by Defendants Brinks
and Story, who were employees of the Town of Windsor at
the time. (*Logan I*, Dkt. No. 4 at 2.)

On June 26, 2018, United States Magistrate Judge David E.
Peebles granted Plaintiff's IFP application but recommended
that Plaintiff's Complaint be dismissed pursuant to 28
U.S.C. § 1915(e)(2)(B), with leave to replead because it did
not allege facts plausibly suggesting that the Court had subject
matter jurisdiction over her claims. (*Logan I*, Dkt. No. 4 at 9.)

On July 11, 2018, Plaintiff filed an Amended Complaint.
(*Logan I*, Dkt. No. 5.) On August 14, 2018, Chief
United States District Judge Glenn T. Suddaby, accepted
and adopted in its entirety Magistrate Judge Peebles's
Report-Recommendation and dismissed Plaintiff's Amended
Complaint. (*Logan I*, Dkt. No. 6.) Chief Judge Suddaby held
that Plaintiff's Amended Complaint did "not cure the pleading
defects identified by Magistrate Judge Peebles in his thorough
Report-Recommendation." (*Id.* at 3.) In addition, Chief Judge
Suddaby noted that "the Amended Complaint does not allege
either events occurring within three years of the date of
the filing of the Complaint or facts plausibly suggesting an
exception to the statute of limitations (such as a continuing
violation)." (*Id.* at 4.) However, since Plaintiff did not have
the benefit of Chief Judge Suddaby's Decision and Order
when she filed her Amended Complaint on July 11, 2018,
she was given "one *final* chance to correct these pleading
defects." (*Id.* at 5 [emphasis in original].)

On September 14, 2018, Plaintiff filed a Second Amended
Complaint. (*Logan I*, Dkt. No. 7.) On September 28,
2018, Magistrate Judge Peebles recommended that Plaintiff's
Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)
(2)(B), without leave to replead. (*Logan I*, Dkt. No. 8.)

On October 19, 2018, Plaintiff filed a Third Amended
Complaint. (*Logan I*, Dkt. No. 13.) On December 17, 2018,
Chief Judge Suddaby accepted and adopted Magistrate Judge
Peebles's Report-Recommendation in its entirety, dismissed
Plaintiff's Third Amended Complaint, and certified that an
appeal would not be taken in good faith pursuant to 28
U.S.C. § 1915(a)(3). (*Logan I*, Dkt. No. 14.)

 **\*2**  On January 11, 2019, Plaintiff filed a notice of appeal.
(*Logan I*, Dkt. No. 16.) On June 5, 2019, the Second Circuit
issued an order dismissing Plaintiff's appeal because it "lacks
an arguable basis either in law or in fact." (*Logan I*, Dkt. No.
18.)

On December 20, 2019, Plaintiff commenced this *pro se*
action against Defendants.

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 46 of 85

Logan v. Town of Windsor, New York, Not Reported in Fed. Supp. (2020)

## II. PLAINTIFF'S ALLEGATIONS

Construed as liberally [1] as possible, Plaintiff's Complaint alleges that she sustained injuries on or about March 7, 2011, when she was struck by debris thrown in her direction by a snowplow operated by Defendants Brinks and Story, who were employees of the Town of Windsor at the time. (*See generally* Dkt. No. 1.) Plaintiff alleges that as a result of these injuries, she sustained permanent physical damage, resigned from her job, and has become financially stressed. (*Id.*) Plaintiff alleges that her "original lawsuit ... was set at $209.000.00 dollars" and she is "more than willing to negotiate and mediate for a lower amount" but "is asking for the Courts decision on what they feel is a fare amount.?" (Dkt. No. 1 at 9 [unaltered text, errors in original].)

In addition, Plaintiff alleges that during a court proceeding related to the events alleged in the Complaint, Defendants' attorney, James P. O'Brien submitted "court documents. Stating 'plaintiff has bone degeneration, arthritis, and other pre-existing medical issues'. He also stated that 'plaintiff only resided at her home for 6 months'." (*Id.* at 10.) However, Plaintiff alleges that she has not been diagnosed with nor have any of the symptoms described by Mr. O'Brien and she "had been living at her residence for 3.5 years." (*Id.*)

As a result of these factual allegations, Plaintiff asserts the following two claims: (1) a claim of negligence in operation of the snowplow; and (2) defamation based on Defendants' attorney's statements. (Dkt. No. 1 at 9-10.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma pauperis.* (Dkt. No. 2.)

## III. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [3]

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved ... before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at \*5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

Logan v. Town of Windsor, New York, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 47 of 85

544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**\*4** The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ...

or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## V. ANALYSIS

After careful consideration, I recommend dismissal of Plaintiff's claims because the Complaint fails to allege facts plausibly suggesting that the Court has subject matter jurisdiction.

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agric., Inc. v. Perry*, 12-CV-6286, 2013 WL 840706, at \*1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, 09-CV-7651, 2013 WL 30672, at \*1 (S.D.N.Y. Jan. 3, 2013)). Federal courts are mandated to examine their own jurisdiction *sua sponte* at every stage of the litigation. *ACCD Global Agric., Inc.*, 2013 WL 840706, at \*1; *see In re Tronox, Inc.*, 855 F.3d 84, 85 (2d Cir. 2017) (federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*).

A federal court exercises limited jurisdiction pursuant to Article III of the Constitution. It has subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332.

*Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 511-12 (D. Conn. 2015) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction) (footnote omitted)), *reconsideration denied*, 14-CV-0053, 2015 WL 2124365 (D. Conn. May 6, 2015).

The existence of a federal question is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. 28 U.S.C. § 1331. A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 48 of 85

Logan v. Town of Windsor, New York, Not Reported in Fed. Supp. (2020)

necessarily depends on a resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9 (1983).

Here, the Civil Cover Sheet, which accompanied Plaintiff's Complaint, alleges that the basis for the Court's jurisdiction is that it presents a federal question. (Dkt. No. 1, Attach. 1.) However, the Complaint fails to cite any federal statute, treaty, or the United States Constitution as a basis for Plaintiff's claims. Instead, the Complaint states that this Court has jurisdiction because "Plaintiff is a resident of Broome County. Also the 'Vehicle & Traffic Law for New York State s1103(b)', is when the Conduct of the Snowplow Operators is judged to be, Drunk Driving while plowing a road, or 'RECKLESS DISREGARD'." (Dkt. No. 1 at 2 [unaltered text, errors in original].) In addition, the Complaint alleges that a "friend, told plaintiff about Federal Court. Plaintiff states 'the respect and concern she's received is phenomenal!' This is also why plaintiff feels the Federal Court is the proper Venue." (Dkt. No. 1 at 3 [unaltered text, errors in original].)

 **\*5** Merely because the events giving rise to Plaintiff's claims occurred within the Northern District of New York, does not convey jurisdiction to this Court. Plaintiff's only asserted causes of action (negligence and defamation), are New York State common-law torts governed by state law, and as plead, these state-law claims do not raise any federal questions. *Wilson v. Neighborhood Restore Dev.,* 18-CV-1172, 2018 WL 2390143, at \*3 (E.D.N.Y. May 18, 2018) (dismissing the complaint for lack of subject matter jurisdiction where the plaintiffs alleged claims of breach of contract, breach of warranty of habitability, negligence, personal injury, and fraud); *Lindstrom v. Transervice Logistics Inc.,* 17-CV-6988, 2018 WL 1121598, at \*2 (E.D.N.Y. Feb. 27, 2018) (*sua sponte* dismissing the complaint for lack of subject matter jurisdiction, where the plaintiffs alleged claims pursuant to negligence and loss of consortium based on a multi-vehicle automobile accident that occurred on Interstate 78); *West v. Sanchez,* 17-CV-2482, 2017 WL 1628887, at \*2 (E.D.N.Y. May 1, 2017) (finding no federal question jurisdiction where the "allegations appear to amount to a state-law personal injury claim"); *Zheng v. General Elec. Co.,* 15-CV-1232, 2015 WL 7421961, at \*3 (N.D.N.Y. Oct. 26, 2015) (Hummel, M.J.) ("[a] claim for defamation against non-governmental [actors] arises under New York State common law."); *Mosley v. McIntosh,* 08-CV-9635, 2009 WL 1542546, at \*3 (S.D.N.Y. May 29, 2009) (quoting *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir. 2004)) (" 'Defamation ... is an issue of state

law, not federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action.' "); *White v. Ercole,* 06-CV-1136, 2009 WL 602890, at \*5 (S.D.N.Y. Mar. 3, 2009) (negligence claim is a matter of state law).

The Court notes that Plaintiff does not assert any colorable claim arising under the Constitution, laws, or treaties of the United States as a basis for federal jurisdiction, and the case could be dismissed for that reason. The Court must keep in mind, however, that when a plaintiff proceeds *pro se,* the pleadings must be construed with great liberality. *McDermott,* 2011 WL 4834257, at \*3 (citing *Sealed Plaintiff v. Sealed Defendants,* 537 F.3d 185, 191 (2d Cir. 2008)). The Court must interpret the pleadings to raise the strongest arguments they suggest. *Id.* (citing *McPherson v. Coombe,* 174 F.3d 276, 279 (2d Cir. 1999)).

There is no diversity of citizenship sufficient to assert jurisdiction in this case pursuant to 28 U.S.C. § 1332. (Dkt. No. 1 at 4 [alleging that Plaintiff is a citizen of New York State and that Defendant Town of Windsor is also a citizen of New York State]); *see Illinois v. City of Milwaukee,* 406 U.S. 91, 97 (1972) ("It is well settled that for purposes of diversity of citizenship, political subdivisions are citizens of their respective States.")

After carefully reviewing Plaintiff's Complaint (and the complaint and amended complaints in *Logan I,* which relate to the same events alleged in the Complaint here), and considering other possible bases for jurisdiction, I find that there is no basis for jurisdiction over Plaintiff's Complaint.

## VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 49 of 85

Logan v. Town of Windsor, New York, Not Reported in Fed. Supp. (2020)

to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[4]

**\*6** In this case, because the Court already afforded Plaintiff an opportunity to amend her Complaint three times in *Logan I*, which, as set forth *infra*, relates to the same underlying events as alleged here, I find that the Court need not grant Plaintiff an opportunity to amend. *See Hall v. Clinton Cnty.*, 18-CV-1405, 2020 WL 1923236, at *7 (N.D.N.Y. Apr. 21, 2020) (Suddaby, C.J.) (dismissing without leave to amend the *pro se* plaintiff's amended complaint where the court "already afforded Plaintiff an opportunity to amend his Complaint" and the court found that it "lacks subject-matter jurisdiction."). Moreover, the Court notes that it afforded Plaintiff substantial solicitude in construing the content of her complaints and in considering the totality of all her allegations when determining the sufficiency of her complaints. (The Court has also ignored the vexatiousness of Plaintiff's having filed virtually identical complaints in this Court.)[5] The Court cannot conceive of additional allegations that Plaintiff could add to the collection of complaints and amendments that the Court has already considered. As a result, despite Plaintiff's *pro se* status, the Court finds that allowing an opportunity to amend would be futile. *See Doroz v. Delorio's Foods, Inc.*, 19-CV-0924, 2020 WL 529841, at *13 (N.D.N.Y. Feb. 3, 2020) (Suddaby, C.J.) (finding that allowing an opportunity to amend would be futile where the Court already afforded the plaintiff "substantial solicitude in construing the context" of his submissions and the plaintiff "filed virtually identical complaints in this Court"); *see also Carrasco v. Annucci*, 17-CV-0246, 2017 WL 6492010, at *2 (N.D.N.Y. Dec. 15, 2017) (Suddaby, C.J.) (dismissing a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) without leave to amend "because plaintiff has already had two opportunities to amend the complaint").

## VII. PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 3.) The application indicates that Plaintiff has been unsuccessful in her efforts to obtain counsel on her own from the private sector. (*Id.*)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action. As such, the Court cannot find that Plaintiff's claims are likely to be of substance. Plaintiff's motion (Dkt. No. 3) is therefore denied.

**ACCORDINGLY**, it is

**\*7 ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

Logan v. Town of Windsor, New York, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 50 of 85

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) because the Court lacks subject matter jurisdiction.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. §

636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)).

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1950860

---

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

2    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. Hayes v. United States, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

4    *See also* Carris v. First Student, Inc., 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999) (that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"), is likely not an accurate recitation of the governing law after Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

5    In fact, the Court notes that the first page of the Complaint has the type-written words "Motion for Rehearing" crossed out. (Dkt. No. 1 at 1.) In addition, the first page of the Complaint also has the type-written words "(GTS/DEP)" crossed out. (*Id.*) "GTS" are the initials of the assigned Chief United States District Judge in *Logan I*, and "DEP" are the initials of the assigned United States Magistrate Judge in *Logan I*. These markings further emphasize Plaintiff's intent to get a figurative "second bite at the apple" after *Logan I* was dismissed with prejudice.

Logan v. Town of Windsor, New York, Not Reported in Fed. Supp. (2020)

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 51 of 85

6      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

7      The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

**End of Document**                                                 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 52 of 85

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

2018 WL 2390143
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Wilbert WILSON, Roland Woods,
Ta'kyashilah Sabree, and E.J., Plaintiffs,
v.
NEIGHBORHOOD RESTORE DEVELOPMENT
and Northeast Brooklyn, Defendants.

18-CV-1172 (MKB)
|
Signed 05/18/2018

**Attorneys and Law Firms**

Wilbert Wilson, Brooklyn, NY, pro se.

Roland Woods, Brooklyn, NY, pro se.

Ta'kyashilah Sabree, Brooklyn, NY, pro se.

E.J., Brooklyn, NY, pro se.

Max Rayetsky, Goldstein Hall, PLLC, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge

**\*1** Plaintiffs Wilbert Wilson, Roland Woods, Ta'kyashilah Sabree and E.J., proceeding *pro se*,[1] commenced the above-captioned action on February 22, 2018 against Defendants Neighborhood Restore Development and Northeast Brooklyn, alleging breach of contract, breach of the warranty of habitability, negligence, personal injury and fraud. (Compl. 2, Docket Entry No. 1.) For the reasons set forth below, the Court dismisses the Complaint.

**I. Background**

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order. Plaintiffs allege Defendants unlawfully obtained possession of real property located at 580 Lafayette Avenue in Brooklyn, New York, which appears to be Plaintiffs' residence, through a fraudulent tax lien foreclosure. (*Id.* at

1, 3.) Plaintiffs assert that Defendant Neighborhood Restore, a nonprofit organization "organized by the Department of Finance to be a [l]ien [s]ale [h]older," "was specifically unaware that the plaintiff[ ] Wilbert Wilson had obtained a [r]everse [m]ortgage and was approved [and] ready to pay off the taxes owed to the City of New York" and that Plaintiffs "had requested and received a Temporary Exemption Tax Lien due to property renovation."[2] (*Id.* at 3). In addition, Plaintiffs allege that "[w]hen the City of New York [t]ransferred the [l]ien [s]ale," to Neighborhood Restore, it did not "transfer[ ] the [d]eed," but Neighborhood Restore nonetheless "[f]raudulently deleted" Plaintiff Wilbert Wilson from the deed, and added Neighborhood Restore. (*Id.*) Plaintiffs further allege that Neighborhood Restore's actions "[c]aused the [d]eath of three (3) members of the family," but do not explain how the deaths occurred or provide any other relevant information. (*Id.*) Plaintiffs seek money damages in the amount of $50 million. (*Id.*)

**II. Discussion**

**a. Standard of review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) ); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 53 of 85

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

**\*2** Nevertheless, if the court "determines at any time that it lacks subject-matter jurisdiction, the [c]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (holding that a district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ) ).

### b. Plaintiffs may not bring suit on behalf of E.J.

It is well-settled that a lay person cannot represent another individual—not even his or her own child. *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); *see Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own child."). When it is apparent to the court that a *pro se* plaintiff is suing on behalf of a minor, the Court has a duty to protect the child by enforcing, *sua sponte*, this prohibition against unauthorized representation. *Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 125 (2d Cir. 1998). In this case, E.J., a named Plaintiff in this action, appears to be a minor. (*See* Compl. 5.) Because the other Plaintiffs are not attorneys, they cannot bring suit on behalf of E.J. Therefore, the Court dismisses without prejudice all claims filed on behalf of E.J.

### c. The Court lacks subject matter jurisdiction over Plaintiffs' claims

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Federal question jurisdiction provides federal courts jurisdiction over "all civil

actions arising under the Constitution, laws, or treaties of the United States." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A plaintiff properly invokes section 1331 jurisdiction when he pleads a colorable claim "arising under" the Constitution or laws of the United States. Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012).

For a federal court to exercise subject matter jurisdiction based on diversity, there must be complete diversity of citizenship between all plaintiffs and all defendants. *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants."); *Lovejoy v. Watson*, 475 Fed.Appx. 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction."). For purposes of diversity of citizenship, a corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1); *see Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (holding that " 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Bayerische Landesbank*, 692 F.3d at 48.

**\*3** Construing Plaintiffs' allegations to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ), the Complaint does not suggest any basis for subject matter jurisdiction. There is no federal question jurisdiction because Plaintiffs' claims do not arise under the Constitution or any federal laws. *See* 28 U.S.C. § 1331. Instead, Plaintiffs allege claims for breach of contract, breach of the warranty of habitability, negligence, personal injury and fraud, (Compl. 2), all of which are state law claims, *see JP Morgan Chase Bank, N.A. v. Hunter Grp., Inc.*, No. 10-CV-00917, 2010 WL 5313547, at \*3 (E.D.N.Y. Dec. 20, 2010) (contract

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 54 of 85

Wilson v. Neighborhood Restore Development, Not Reported in Fed. Supp. (2018)

claims governed by state law); *Silver v. Campbell*, No. 16-CV-0911, 2017 WL 4011259, at \*6 (N.D.N.Y. Sept. 11, 2017) (dismissing state law warranty of habitability claim of for lack of diversity jurisdiction); *White v. Ercole*, No. 06-CV-1136, 2009 WL 602890, at \*5 (S.D.N.Y. Mar. 3, 2009) (negligence claim a matter of state law); *West v. Sanchez*, No. 17-CV-2482, 2017 WL 1628887, at \*2 (E.D.N.Y. May 1, 2017) (no federal question jurisdiction on what "amount[s] to a state-law personal injury claim" (citations omitted) );

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 182 (2d Cir. 2015) (elements of common-law fraud governed by state law).

In addition, Plaintiffs do not invoke the Court's diversity jurisdiction, and, in any event, the addresses provided by Plaintiffs suggest a lack of complete diversity between the parties. (Compl. 2 (listing New York addresses for Defendants Neighborhood Restore Development, Northeast Brooklyn and Plaintiff Wilbert Wilson).) Therefore, there is no diversity of citizenship that would confer diversity jurisdiction. *See Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315, 325 (2d Cir. 2001) (holding that federal diversity statute mandates complete diversity).

Because the Complaint does not give rise to federal question or diversity jurisdiction, the Court dismisses the Complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Ruhrgas*, 526 U.S. at 583. However, in light of Plaintiffs' *pro se* status, the Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of this Memorandum and Order, in order to plead facts supporting subject matter jurisdiction. In addition, to the extent Plaintiffs seek to bring claims on behalf of E.J., Plaintiffs must retain counsel to assert such claims.

Plaintiffs are advised that the amended complaint will completely replace the original complaint, must be captioned, "Amended Complaint," and must bear the same docket number as this Order.

In order to invoke the Court's diversity jurisdiction, Plaintiffs must establish complete diversity of citizenship (meaning that no Defendant can be a citizen of the same State as each Plaintiff) and must set forth the amount in controversy in the amended complaint. *See, e.g., Pearson v. Reid-Robinson*, 632 Fed.Appx. 19, 19 (2d Cir. 2016) (holding that courts should

allow "plaintiffs to amend complaints to drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship" (internal quotation marks omitted) (citing *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987) ) ).

If Plaintiffs intend to invoke the Court's federal question jurisdiction, Plaintiffs must set forth sufficient factual content to allow the Court "to draw the reasonable inference" that each defendant named in the amended complaint is liable for the misconduct or harm caused to each Plaintiff named in the amended complaint, *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8, and that such conduct is in violation of a federal constitutional or statutory right.

**\*4** All further proceedings shall be stayed for thirty (30) days. If Plaintiffs fail to file an amended complaint which establishes the Court's jurisdiction over this matter within the time allowed, the Court will dismiss the Complaint without prejudice for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### III. Conclusion

For the foregoing reasons, the Court dismisses without prejudice all claims brought on behalf of E.J., *Cheung*, 906 F.2d at 61, and dismisses the entire Complaint without prejudice for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3). The Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order. No summons shall issue at this time, and all further proceedings shall be stayed for thirty (30) days.

Although Plaintiffs paid the filing fee, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 2390143

## Footnotes

1       Although the Complaint contains a sentence suggesting that Plaintiffs are represented by counsel, (*see* Compl. 3) ("The Plaintiff and his attorney are seeking to consider negotiation with the Defendants...."), no attorney has appeared in this action on Plaintiffs' behalf.

2       The Complaint does not provide information regarding the second named Defendant, Northeast Brooklyn.

---

**End of Document**                                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1121598
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Shawn LINDSTROM and Doreen Lindstrom, Plaintiffs,
v.
TRANSERVICE LOGISTICS INC., Penske
Truck Leasing Corporation, Gates Equipment
Services, LLC, Lone Star Transportation, LLC,
FedEx Ground Package System Inc., Transcom
Express, LLC, Transcom Delivery LLC, Alfred D.
Kinnick, Solomon Garrett, Omar Placencio-Correa,
Shota Manvelidze, and Jose L. Perez, Defendants.

17-CV-6988
|
Signed February 26, 2018
|
Filed 02/27/2018

**Attorneys and Law Firms**

Joseph G. Dell, Dell & Dean, PLLC, Garden City, NY, for
Plaintiffs.

Thomas G. Vaughan, Marshall Dennehey Warner Coleman
& Goggin, Bryan T. Schwartz, Gallo Vitucci Klar, Peter A.
Frucchione, Mintzer Sarowitz Zeris Ledva & Meyers, New
York, NY, for Defendants.

MEMORANDUM AND ORDER

I. Leo Glasser, U.S.D.J.

**\*1** Plaintiffs Shawn Lindstrom and Doreen Lindstrom
("Plaintiffs") bring negligence and loss-of-consortium claims
related to a multi-vehicle automobile accident that occurred
on Interstate 78 in February 2016. On January 31, 2018, the
Court issued an order directing Plaintiffs to show cause why
this case should not be dismissed for lack of subject-matter
jurisdiction, noting that complete diversity is lacking and that
federal-question jurisdiction appeared not to exist. ECF No.
11. The order directed Plaintiffs to show cause within twenty-
one days—i.e., on or before February 21, 2018. On that date,
rather than respond to the order to show cause, Plaintiffs
instead filed a letter requesting that the action be transferred to
the Middle District of Pennsylvania. ECF No. 18. That request
is denied, and this action is dismissed for lack of subject-
matter jurisdiction.

**BACKGROUND**

On February 13, 2016, Shawn Lindstrom was severely
injured in a multi-vehicle automobile accident on Interstate
78. *See* ECF No. 1 ("Compl.") ¶¶ 1, 32. Plaintiffs allege
that the accident, Shawn Lindstrom's resulting injuries, and
Doreen Lindstrom's resulting loss of consortium with her
husband were caused by the negligence of the twelve named
defendants in this case, the owners and operators of the other
vehicles involved in the accident. *See id.* ¶¶ 19-37. As alleged
in the complaint, Plaintiffs are both citizens of New York, and
so too are two of the defendants, Transervice Logistics Inc.
and Shota Manvelidze. Compl. ¶¶ 2-3, 5, 10.

Plaintiffs commenced this action on November 30, 2017.
Compl. On January 31, 2018, the Court issued an order
directing Plaintiffs to show cause, within twenty-one days
from the date of the order, why the case should not be
dismissed for lack of subject-matter jurisdiction. ECF No.
11. Exactly twenty-one days later, on February 21, 2018,
Plaintiffs filed a letter with the Court requesting that the action
be transferred to the Middle District of Pennsylvania, where
several cases relating to the same automobile accident are
pending. ECF No. 18. Plaintiffs have not responded to the
order to show cause.

**DISCUSSION**

"Generally speaking, a court lacks power to issue an order in a
matter over which the court lacks subject matter jurisdiction."
*Leeds, Morelli & Brown, P.C. v. Hernandez*, No. 05-CV-1135,
2005 WL 2148994, at \*2 (E.D.N.Y. Sept. 6, 2005). This rule
applies no less in cases where, as here, a court is asked merely
to transfer an action to a different venue; a court may not issue
a transfer order if it lacks subject-matter jurisdiction over the
action. *See id.* at \*3 ("Since this court lacks subject matter
jurisdiction over the instant matter, no order transferring the
case may be issued." (collecting cases)); *see also, e.g., In
Suk Chai v. Big Boy Coach, Inc.,* No. 13-CV-746, 2013
WL 5676484, at \*2-3 (E.D.N.Y. Oct. 17, 2013) (remanding
motor-vehicle negligence case to state court—and declining
to consider a motion to transfer venue—upon concluding
that subject-matter jurisdiction was lacking). The rule plainly
applies here.

Lindstrom v. Transervice Logistics Inc., Not Reported in Fed. Supp. (2018)

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 57 of 85

**\*2**  The Court need not belabor the jurisdictional analysis, which is straightforward. It is hornbook law that, in general, a federal court has subject-matter jurisdiction over a case only if (i) diversity of citizenship between the parties exists and the matter in controversy exceeds $75,000 or (ii) the case "arises under the Constitution, laws, or treaties of the United States." [1] 28 U.S.C. §§ 1331–1332. Here, diversity jurisdiction does not exist, because complete diversity is lacking: As pled in the complaint, at least two of the defendants are, like Plaintiffs, citizens of New York. *See* Compl." ¶¶ 2-3, 5, 10. The Court has federal-question jurisdiction if and only if (i) federal law creates the cause of action or (ii) the cause of action, though created by state law, "poses a substantial federal question." *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 192 (2d Cir. 1987). Neither of these two conditions is satisfied here. Plaintiffs' only asserted causes of action, negligence and loss of consortium, are common-law torts governed by state law, and as pled these state-law claims do not raise any federal questions. Plaintiffs cannot overcome this fundamental deficiency through their citations to the Commerce Clause and a hodgepodge of provisions from title 49 relating to the powers of the Secretary of Transportation.

*See* Compl. ¶¶ 16-18. At bottom, this action is an automobile negligence case between non-diverse parties; absent unusual circumstances, it belongs in state court—and no such unusual circumstances have been pled. Accordingly, the Court lacks subject-matter jurisdiction over this action.

Having concluded that subject-matter jurisdiction is lacking, the Court declines to address the merits of Plaintiffs' request to transfer this case to the Middle District of Pennsylvania. With no subject-matter jurisdiction, the Court lacks power to issue a transfer order—or any order—and must dismiss the case.

## CONCLUSION

For the foregoing reasons, Plaintiffs' transfer request is denied, and this action is dismissed for lack of subject-matter jurisdiction.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1121598

## Footnotes

1    Federal subject-matter jurisdiction does exist in certain other limited circumstances, none of which apply here. *See, e.g.,* 28 U.S.C. § 1330 (actions against foreign states); *id.* § 1333 (admiralty cases); *id.* § 1346 (actions against the United States).

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1628887
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Oliver WEST, Plaintiff,
v.
Lorraine SANCHEZ, Defendant.

17-CV-2482 (MKB)
|
Signed 05/01/2017

**Attorneys and Law Firms**

Oliver West, Long Island City, NY, pro se.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge

*1 Plaintiff Oliver West, proceeding *pro se*, filed the above-captioned action against Defendant Lorraine Sanchez on April 18, 2017, alleging that Defendant caused him to contract a sexually transmitted disease. (Compl., Docket Entry No. 1.) The Court grants Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 solely for the purpose of this Memorandum and Order. For the reasons discussed below, the Court dismisses the Complaint.

**I. Background**

The Court assumes the truth of the facts set forth in the Complaint for the purpose of this Memorandum and Order. Plaintiff alleges that Defendant infected him with a sexually transmitted disease after the two engaged in sexual intercourse in 2006. (Compl. at 5.)[1] Plaintiff states that he "know[s] that the defendant is responsible for [his] contracting the disease because [he] tested positive for the virus a few years afterwards," but he was not informed of his test results at that time because he failed to make the follow-up appointment with his physician. (*Id.* at 7.) Plaintiff first learned that he had the disease in 2016. (*Id.*) Plaintiff alleges that Defendant's actions have "irrevocably changed [his] life" and that he "will be forced to be on daily medication, physical pain and psychiatric care ... some of which will incur costs." (*Id.* at 5.) Plaintiff and Defendant both live in New York. (*Id.* at 2.)

**II. Discussion**

**a. Standard of review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *see Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly,* the court "remain[s] obligated to construe a *pro se* complaint liberally").

Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007). In addition, if the Court "determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.,* 790 F.3d 411, 416–17 (2d Cir. 2015) (A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it...." (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000))).

**b. The Court lacks subject matter jurisdiction**
*2 The Court lacks subject matter jurisdiction over the allegations and therefore dismisses the Complaint.

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Federal question jurisdiction provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Bouns v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A plaintiff properly invokes section 1331 jurisdiction when he pleads a colorable claim "arising under" the Constitution or laws of the United States. Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012).

Here, Plaintiff fails to show that the Court has subject matter jurisdiction. Even though Plaintiff invokes the Court's federal-question jurisdiction, (*see* Compl. at 4), Plaintiff has not identified any federal statutes, treaties or constitutional rights at issue in this case. Nor does he state any facts to support any such claim. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (holding that a claim invoking federal question jurisdiction under 28 U.S.C. § 1331 may be dismissed for want of subject matter jurisdiction if it is not colorable, *i.e.*, if it is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous" (citations omitted)). Rather, Plaintiff's allegations appear to amount to a state-law personal injury claim. *See, e.g., Plaza v. Estate of Wisser*, 626 N.Y.S.2d 446, 451 (App. Div. 1995) (toxic tort based on transmission of HIV virus); *Schenk v. Devall*, 613 N.Y.S.2d 478, 469 (App. Div. 1994) (negligence and constructive fraud based on sexually transmitted infection).

Similarly, the Complaint does not provide a basis for the Court to exercise its diversity jurisdiction because Plaintiff has not asserted facts to demonstrate complete diversity of citizenship between himself and Defendant. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants." (citation omitted)); *St. Paul Fire and Marine Ins. Co. v. Univ. Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant." (citation omitted)). Based on the addresses of Plaintiff and Defendant as identified in the Complaint, complete diversity is lacking. Both Plaintiff and Defendant are located in New York. (Compl. at 2.) Accordingly, because Plaintiff and Defendant are not diverse, the Court cannot exercise diversity jurisdiction. *See Lovejoy v. Watson*, 475 Fed.Appx. 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction.")

**\*3** Because Plaintiff fails to allege facts from which the Court can conclude that it has jurisdiction, the Court dismisses the Complaint. *See* 28 U.S.C. § 1915(e)(2)(b); Fed. R. Civ. P. 12(h)(3).

### III. Conclusion

Accordingly, the Court dismisses the Complaint for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1915(e)(2)(b); Fed. R. Civ. P. 12(h)(3). Because the Court lacks subject matter jurisdiction over Plaintiff's claim, any amendment to the Complaint would be futile. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

### All Citations

Not Reported in Fed. Supp., 2017 WL 1628887

**West v. Sanchez, Not Reported in Fed. Supp. (2017)**

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 60 of 85

**Footnotes**

1    Because the Complaint is not consecutively paginated, the Court refers to the page numbers assigned by the electronic document filing system (ECF).

---

**End of Document**                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 602890
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gary WHITE, Plaintiff,
v.
Superintendent Robert ERCOLE, Defendant.

No. 06 Civ. 11361(DAB).
|
March 3, 2009.

West KeySummary

1    **Civil Rights** 🔑 Criminal Law Enforcement;
Prisons

An inmate's transfer from one state prison
to a different state prison did not give him
a valid excuse for his failure to exhaust his
administrative remedies prior to filing a §
1983 action based on a "slip and fall" incident.
The inmate alleged that the prison did not put up
notices that there was a wet floor and as a result
he slipped and hit his face into the cell bars. After
his transfer to another state prison, he remained
in the custody of the same agency. As long as he
was in the custody of the agency against which he
had grievances, he was required to use available
grievance procedures. 42 U.S.C.A. § 1983.

**Attorneys and Law Firms**

Gary White, Ossining, NY, pro se.

*ORDER*

DEBORAH A. BATTS, District Judge.

**\*1** This matter is before the Court upon the November
10, 2008 Report and Recommendation ("Report") of United
States Magistrate Judge Douglas F. Eaton. The Report

recommends that the Defendant's Motion to Dismiss the
Complaint be GRANTED. (Report at 15.)

According to 28 U.S.C. § 636(b)(1)(C), "[w]ithin ten
days after being served with a copy, any party may serve
and file written objections to such proposed findings and
recommendations." 28 U.S.C. § 636(b)(1)(C); *see also*
Fed.R.Civ.P. Rule 72(b) (stating that "[w]ithin 10 days after
being served with a copy of the recommended disposition,
a party may serve and file specific, written objections to
the proposed findings and recommendations"). Despite being
advised of this procedure in Magistrate Judge Eaton's Report
and Recommendation, to date, no specific objections to said
Report and Recommendation have been filed.

Having reviewed the Report and Recommendation, and
finding no clear error on the face of the record, *see* 28
U.S.C. § 636(b) (1)(B), it is hereby

ORDERED AND ADJUDGED as follows:

1. The Report and Recommendation of United States
Magistrate Judge Douglas F. Eaton, dated November
10, 2008, be and the same hereby is APPROVED,
ADOPTED, and RATIFIED by the Court in its entirety;

2. Upon entry of judgment in favor of Defendant, the Clerk
of Court is directed to CLOSE the docket for this case.

SO ORDERED.

*REPORT AND RECOMMENDATION TO JUDGE BATTS*

DOUGLAS F. EATON, United States Magistrate Judge.

Gary White, a *pro se* prisoner, has brought this suit under the
civil rights statute, 42 U.S.C. § 1983, based on a "slip and
fall" incident that occurred on August 25, 2006, while he was
housed at Green Haven Correctional Facility. His Complaint
(dated September 5, 2006) was mailed from Green Haven
with a postmark of September 12, 2006.

On January 19, 2007, Assistant Attorney General Donald
Nowve served and filed a Notice of Motion to Dismiss
pursuant to Fed. R. Civ. Pr. 12(b)(6), along with
his Declaration, a supporting Memorandum of Law

("Def.Mem.") and a 1/16/07 Declaration of Thomas G. Eagen. [1]

On April 25, 2007, I received from White an undated Affirmation in Opposition; I am annexing it to this Report. AAG Nowve served and filed a Reply Memorandum of Law on June 7, 2007. I recommend that Judge Batts dismiss the Complaint because White failed to exhaust his administrative remedies; moreover, the Complaint merely alleges negligent conduct that does not rise to the level of a violation of the federal Constitution.

The Complaint is on the standard form provided by our Court's Pro Se Office for prisoners bringing 🚩 § 1983 actions. White describes the incident that prompted this lawsuit as follows:

> On 8–25–06 at approximately 11:30 a.m. I was returning to my cell—E-block—237. As I was walking to my cell, I slipped in a massive amount of water. That was not mopped up .... There were no wet floor signs on the company [premises?] to inform anyone the floor was wet! Because of the negl[ig]ence of this incident, I slipped and fell and hit my face area on the cell bars. At which time I was taken to the facility hospital, and then transferred to the outside hospitals. I advised the doctor of what happen[ed], and he confirmed my injuries were sustained by hitting my face on a very hard surface (bars). There have been several complaints, regarding the placement[ ] of wet floor signs. Nothing has been resolved through the I.L.C. [Inmate Liason Committee] or grievance dept. Wet floor signs are a mandatory procedure according to safety procedures! For the safety of all, not just myself the Supt. of this facility is [ ]liable and neglects to [en]force the safety procedures required by law.

**\*2** White alleges that four of his lower teeth "were completely knocked out, [but] were put back in place by medical wire."

In Part IV of the form Complaint ("Exhaustion of Administrative Remedies"), White states that he filed a grievance "concerning safety pre-cautions" with the "inmate grievance—I.L.C.". Question F.2 on the form asks: "What was the result, if any?" To this he answered: "Never spoke to me, never had a hearing." Question F.3 asks: "What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process." White responded: "(None) I never received a final decision."

In his Memorandum of Law, AAG Nowve urges our Court to dismiss the Complaint for three separate reasons. First, White failed to exhaust his administrative remedies. Second, negligence does not rise to the level of a constitutional violation. Third, White does not allege any personal involvement by Superintendent Ercole in the alleged failure to post signs warning about the wet floor.

In support of the first argument, Thomas Eagen's Declaration states that (1) Green Haven's records show only two 2006 grievances by White (Exh. A) neither of which concerned any slippery condition or any lack of "wet floor" signs, and (2) the records of the Central Office Review Committee ("CORC") show that White never appealed to CORC about any grievance except a 2002 grievance about a use of force (Exh. B).

White responds in his Affirmation in Opposition:

> 5) The plaintiff did file a grievance with regards to a slipping and falling incident that took place at Green Haven. It is the plaintiff's view that he received no response, due to corrupt measures taken to discontinue, dispose and to void grievance, and so such grievance could not realistically be brought to a CORC level, for review, and responds thereby denying plaintiff his liberty and constitutional right to due process. Soon thereafter plaintiff was transferred [to Sing Sing].

Pursuant to *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), I will give a liberal construction to this statement and the rest of his affirmation. I read White's arguments to be (1) that an appeal to CORC would have been futile ("such grievance could not realistically be brought to a CORC level"), and (2) that his transfer from Green Haven to Sing Sing somehow precluded him from pursuing the grievance process regarding events that occurred at Green Haven. In essence, White is asking our Court to excuse his failure to exhaust administrative remedies, and to address the merits of his complaint despite the Prison Litigation Reform Act.

The Reply Memorandum points out that White has failed to submit any evidence to support his allegation that he filed an initial grievance. Further, it is undisputed that White took no steps to appeal to CORC. Hence, the main issue is whether he has shown any justification that would excuse him from the statutory requirement of full exhaustion of all administrative remedies, including all appeals.

*DISCUSSION*

**\*3** When ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In addition, the court must draw all reasonable inferences in favor of the plaintiff. *Johnson v. Newburgh Enlarged School District,* 239 F.3d 246, 250 (2d Cir.2001). Because White is a *pro se* plaintiff, his complaint "is to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted). However, "to survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient " 'to raise a right to relief above the speculative level.' " *Atsi Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007), *quoting Twombly,* 127 S.Ct. at 1965 (2007).

In a § 1983 case where the defense argues lack of exhaustion, the court has the option of converting a dismissal motion into a motion for summary judgment, so that the Court may consider materials outside the pleadings in order to resolve the issue of exhaustion. Fed. R. Civ. Pr. 12(b)(6) and 12(d); *Collins v. Goord,* 438 F.Supp.2d 399, 411–12 (S.D.N.Y.2006) (Mukasey, J.). In my view, Mr. Eagen's Declaration is an appropriate document to be considered.

1. *White failed to exhaust his administrative remedies.* In 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court made clear that this exhaustion requirement is mandatory, and that it applies "irrespective of the forms of relief sought and offered through administrative avenues," *id.* at 741, n. 6, as long as a prison grievance tribunal had authority to take some responsive action. Further, it applies to all prisoners seeking redress for prison circumstances or occurrences, regardless of whether a prisoner complains about general prison conditions or about a specific incident. *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Moreover, the PLRA requires that the prisoner's exhaustion must be "proper." *Woodford v. Ngo,* 546 U.S. 81, 126 S.Ct. 2378, 2387 (2006). "This means ... that a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford,* 126 S.Ct. at 2384.

The New York State Department of Correctional Services ("DOCS") has an established, formal, internal administrative grievance procedure for prisoner complaints. See 7 N.Y.C.R.R. Part 701 "Inmate Grievance Program." The DOCS Inmate Grievance Program is essentially a three-step process. 7 N.Y.C.R.R. § 701.1(c), § 701.5. First, an inmate must submit his grievance to the Inmate Grievance Review

Committee ("IGRC") at his facility. Second, after receiving a written response from the IGRC, the inmate may appeal to the superintendent. Third, after he receives the superintendent's written response, he may appeal to the Central Office Review Committee ("CORC") in Albany. 7 N.Y.C.R.R. § 701.5. [2]

*Before* filing a 🔖 § 1983 action in federal court, a New York prisoner must appeal all the way to the CORC.

**\*4** Thomas Eagen is the Director of the Inmate Grievance Program and he is custodian of the records maintained by CORC, which is the body that renders final administrative decisions under the Inmate Grievance Program. In his Declaration, Director Eagen states that CORC's files and computer database contain records of all appeals received from the IGP Offices of all New York State prisons going back to 1990. CORC's records show that Gary White never appealed to CORC about any grievance except a 2002 grievance about a use of force (Exh. B). Director Eagen further states that defense counsel obtained Green Haven's records, which show only two 2006 grievances by White (Exh. A) neither of which concerned any slippery condition or any lack of "wet floor" signs.

If, for the sake of argument, we were to accept White's statement that he filed an initial grievance, nevertheless he failed to comply with the requirement of full and proper exhaustion—it is **undisputed** that he took no steps to appeal to CORC. He alleges that Green Haven authorities "never spoke to me, never had a hearing," but this does not excuse his failure to appeal to the next level. [3] The fact that he did not complete the whole process means that he failed to exhaust the procedure made available by DOCS.

Lack of exhaustion "is not jurisdictional," but is an affirmative defense. 🔖 *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007). If an inmate files a federal lawsuit before completely exhausting the grievance procedures and appeals, then the Court must normally dismiss the unexhausted claim. 🚩 42 U.S.C. § 1997e(a). 🔖 *Jones,* 127 S.Ct. at 925–26. However, prior to the Supreme Court's *Woodford* decision, the Second Circuit issued several decisions saying that, notwithstanding the mandatory nature of the PLRA, there may be some circumstances where a failure to exhaust may be excused. [4] Judge Mukasey later discussed such possible exceptions in 🔖 *Collins v. Goord,* 438 F.Supp.2d 399, 411 (S.D.N.Y.2006), decided three weeks

after the Supreme Court's *Woodford* decision. He noted that "parts of the [Second Circuit's] *Hemphill* inquiry may be in tension with *Woodford.*" *Collins,* at 411, n. 13. The Second Circuit has not yet fully addressed the extent to which the leniency of its earlier decisions may now be invalidated by *Woodford.* See, 🔖 *Macias v. Zenk,* 495 F.3d 37, 41, 43–44 (2d Cir.2007), and *Benjamin v. Commissioner,* 2008 WL 4280074 (2d Cir. Sept.18, 2008) (both discussing threats). However, White's case is easily resolved without reaching that issue.

White's affirmation implicitly asserts that he qualifies for an exception to *Woodford's* general requirement of full and proper exhaustion. However, he does not allege any circumstances that would fit any exception recognized by the Second Circuit, whether before or after *Woodford.* White says: "It is the plaintiff's view that he received no response [because prison officials took] corrupt measures ... to discontinue, dispose and to void grievance, and so such grievance could not realistically be brought to a CORC level." (Aff. in Opposition, ¶ 5.) But he presents no specifics to support his "view" that there may have been "corrupt measures," nor any plausible, objective reason why he could not "realistically" appeal to CORC in 2006. Back in 2002, he did appeal an unrelated grievance to CORC (see Exh. B to the Eagen Declaration).

**\*5** Even in a *pro se* complaint, conclusory assertions do not suffice—the party opposing a summary judgment motion "may not rest upon the mere allegations or denials of his pleading ... but must set forth specific facts showing that there is a genuine issue for trial." 🔖 *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This is true even when the issue is exhaustion. See 🔖 *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 348 (S.D.N.Y. July 17, 2002), where Judge Marrero ruled:

> Although Rodriguez asserts that he fully exhausted all available remedies, these assertions are insufficient to overcome a motion for summary judgment, even for a *pro se* plaintiff. Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements for summary judgment, and a *pro se* party's bald assertions unsupported by evidence are insufficient to overcome a motion

for summary judgment. Rodriguez has provided no evidence that he received a final determination from CORC before he commenced this action.

(quotation marks and citations omitted).

Nor does White's transfer from one State prison to a different State prison give him a valid excuse for his failure to exhaust. [5] He mailed his Complaint to our Court from Green Haven, only two weeks after he slipped and fell there. Later, he was transferred from Green Haven to Sing Sing, but he remained in the custody of the same agency, namely DOCS. "As long as [the prisoner] was in the custody of the agency against which he had grievances, ... he was required to use available grievance procedures." *Berry,* 366 F.3d 85, 88 (2d Cir.2004). It is immaterial that courts have been more lenient with a prisoner who was transferred from a City prison to a State prison (*Berry* ) or from a County jail to a State prison ( *Rodriguez v. Westchester County Jail Correctional Dept.,* 372 F.3d 485, 488 (2d Cir.2004).

If a prisoner's failure to exhaust is not justified, then the court must dismiss with prejudice. *Berry,* 366 F.3d at 87–88; *Giano,* 380 F.3d at 675. Accordingly, I recommend that Judge Batts dismiss White's complaint for failure to exhaust his administrative remedies.

2. *Negligence is a matter of state law, is not actionable under § 1983, and and does not rise to a constitutional violation.*

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." Thus, to recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

In *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Supreme Court held:

We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.

(Emphasis in the original.) The Court elaborated:

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.

* * *

**\*6** We think that the actions of prison custodians in leaving a pillow on the prison stairs, or mislaying an inmate's property, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

* * *

... "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) .... Where a government official's act causing injury to life, liberty, or property is merely negligent, "no procedure for compensation is constitutionally required." *Parratt,* supra, 451 U.S., at 548, 101 S.Ct., at 1919 (POWELL, J., concurring in result) (emphasis added).

*Daniels,* 474 U.S. at 331–33, 106 S.Ct. at 665–66.

White's Complaint alleges conduct that amounts to simple negligence, not a violation of a federal constitutional or statutory right. *Daniels* and its progeny clearly preclude White's lawsuit. See, *e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998) ( "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Shannon v. Jacobowitz,* 394 F.3d 90, 94 (2d Cir.2005) ("By ruling in *Daniels* that a negligent act could not amount to a constitutional deprivation, the Court ...

clearly articulated that a finding of intentional conduct was a prerequisite for a due process claim"); *Davis v. Reilly,* 324 F.Supp.2d 361, 367 (E.D.N.Y.2004) ("[F]ailure to provide shower mats does not rise to the level of a constitutional violation within the meaning of Section 1983 and, thus is not actionable").

### 3. *The Complaint does not allege personal involvement by Superintendent Ercole.*

White names Superintendent Robert Ercole as the sole defendant. But he does not allege that Ercole was personally involved in leaving water on the floor without putting up warning signs. Nor does he allege that, prior to the injury, Ercole had personal knowledge of the wet floor or the lack of signs. White merely alleges that "The supt. of this facility is [ ]liable and neglects to [en]force the safety procedures required by law," and "At a minimum level, Superintendent Robert Ercoles, is in part personally responsible for breach in constitutional health and safety standard." (Complaint, p. 3; Aff. in Opposition ¶ 6.) Thus, even if White had alleged conduct which could rise to the level of a constitutional violation, and even if he had exhausted his administrative remedies, our Court would have to dismiss the Complaint against the sole defendant.

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006), citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations and internal quotation marks omitted). [6] Personal involvement is a question of fact. *Farrell,* 449 F.3d at 484. White has set forth no facts to show any personal involvement by Ercole.

### 4. *Other arguments.*

**\*7** Finally, I will address two arguments made in paragraphs 9 and 10 of White's affirmation. Paragraph 9 states:

> 9) Until the Supreme Court decided *Booth,* claimant didn't realize that damage claims had to be exhausted as it didn't appear the grievance process was 'available['] for such purposes

indicated in memorandum page 6.

> *Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

This makes no sense, since *Booth* was decided in 2001 and White's slip and fall was in 2006. Paragraph 10 states:

> 10) Please take further notice that defendant is deemed deliberately indifferent pursuant to 50–h of the General Municipal Law of the State of New York, as the above named defendant, Superintendent Robert Ercole, or his assisting counsel didn't request plaintiff to be orally examined relative to occurrence and extent of injuries, for which this claim was presented against defendant.

Section 50–h is not relevant to this case. First, it applies to claims against a municipality, not a claim against the State or a State official. Second, § 50–h simply gives a municipal defendant a right to examine a claimant under oath; it does not require such an examination. See General Municipal Law 50–h(1):

> Whenever a notice of claim is filed against a city, county, town, village, fire district, ambulance district or school district, the city, county ... or school district shall have the right to demand an examination of the claimant....

### CONCLUSION AND RECOMMENDATION

I recommend that Judge Batts grant defendant's motion and dismiss the Complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy, (i.e. **no later than December 2, 2008**) by filing written objections with the Pro Se Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Deborah A. Batts, U.S.D.J. at Room 2510, 500 Pearl Street, New York, N.Y. 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2nd Cir.1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(d). Any request for an extension of time must be addressed to Judge Batts.

## AFFIRMATION IN OPPOSITION

GARY WHITE, a pro-se plaintiff and inmate housed at Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562, affirms the following statements to be true under penalty of perjury.

1) I am the pro-se plaintiff, petitioning from the county of Ossining, and claimant in the above-named case, and as such am fully familiar with the facts thereof.

2) I make this affirmation in opposition to the defendant's motion to dismiss the above referenced claim.

3) I make this affirmation in opposition, upon information and belief, the sources of which are my experience in bringing this claim, discussions with other pro-se petitioners, and the memorandum of the law in support of defendant's motion to dismiss.

 **\*8** 4) Primarily, plaintiff would oppose defendant's motion as premature and prejudicial, in defendant's argument and standard of review. Defendant directs his first point at plaintiff's failure to bring his grievance to a final (CORC) decision administrative appeal prior to the filing of complaint.

5) The plaintiff did file a grievance with regards to a slipping and falling incident that took place at Green Haven Correctional Facility. It is the plaintiff's view that he received no response. due to corrupt measures taken to discontinue,

dispose and to void grievance, and so such grievance could not realistically he brought to a CORC level, for review, and responds thereby denying plaintiff his liberty and constitutional right to due process. Soon thereafter plaintiff was transferred.

6) Health and safety, by merit of equal protection not based on race or gender. His Superintendent, Robert Ercoles, governmental objective to maintain and secure health and safety law standard within the institution in general. At minimum level, Superintendent Robert Ercoles, is in part personally responsible for breach in constitutional health and safety standard. (See U.S. Darren, C.A. 9, 1989; 893 F.3d 208, Constitutional Law 213.1(1), Constitutional Law 213.1(2).

7) To continue the memorandum of law in support of defendant's motion to dismiss is deemed prejudicial to the claimant as its being offered to the court by Superintendent Robert Ercoles, as a pro-se motion, is without merit, as it is obvious. the notarized efforts of two highly trained licensed attorneys, not to mention Attorney General Andrew M. Cuomo and Assistant Attorney General Donald Nowve.

8) Moreover, as such litigation found here, and not only being a question of law, but moral standard. The claimant diligently prays that this Court entitle a more relevant constitutional case law than provided in paragraph 6, to balance the scales of this constitution, measurably, to unfold a more statuary view point of claimant's future medical liberty, dale Court deems it just and proper.

9) Until the Supreme Court decided Booth, claimant didn't realize that damage claims had to be exhausted as it didn't appear the grievance process was "available for such purposes indicated in memorandum page 6. *Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

10) Please take further notice that defendant is deemed deliberately indifferent pursuant to 50–h of the General Municipal Law of the State of New York, as the above named defendant, Superintendent Robert Ercole, or his assisting counsel didn't request plaintiff to be orally examined relative to occurrence and extent of injuries, for which this claim was presented against defendant.

## All Citations

Not Reported in F.Supp.2d, 2009 WL 602890

# Footnotes

1    AAG Nowve also served and filed a "Notice Pursuant to Local Civil Rule 56.2 to *Pro Se* Litigant Opposing Motion for Summary Judgment." This notice was substantially the same as the "Local Rule 12.1 Notice to Pro Se Litigant" set forth in our Court's Local Civil Rule 12.1 ("Notice to Pro Se Litigants Opposing Motions to Dismiss or for Judgment on the Pleadings Treated as Motions for Summary Judgment"). Indeed, the Def. Mem., at p. 4, referred to this notice as a "Local Rule 12.1 Rule 12.1 Notice."

2    The regulations specify time limitations for each step. 7 N.Y.C.R.R. § 701.5. The regulations also provide for extensions and exceptions. 7 N.Y.C.R.R. § 701.6(g). It is undisputed that White took no appeal, and never sought an extension of the deadline to appeal.

3    Even if there is no response to a grievance, DOCS provides that an inmate may appeal to the next level. Thus, to exhaust, White should have appealed even if he got no response to his alleged initial grievance; an appeal was one of the remedies explicitly "available" to him under the New York State Code of Rules and Regulations. 7 N.Y.C.R.R. § 701.6(g)(b)(ii)(2).

4    Several of those cases were argued together and were decided by the Second Circuit on the same day—August 18, 2004. In that group were: 🚩*Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (exhausted claims may be allowed to proceed while unexhausted claims are dismissed); 🚩*Abney v. New York Dep't of Corr. Servs.,* 380 F.3d 663 (2d Cir.2004) (behavior of defendants may render administrative remedies unavailable); *Hemphill v. State of New York,* 380 F.3d 380 (2d Cir.2004) (threats by prison officials may in some instances be sufficient to estop the defendants from asserting the affirmative defense of non-exhaustion); and 🚩*Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004) (plaintiff reasonably believed that DOCS regulations foreclosed recourse to grievance procedure for his particular complaint).

5    See 7 N.Y.C.R.R. § 701.6(h)(2): "An inmate transferred to another facility may continue an appeal of any grievance. If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed ...."

6    There are some circumstances in which a supervisory defendant may be found liable under 🚩 § 1983, but White's allegations do not fit any of the exceptions. 🚩*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995), citing 🚩*Wright,* 21 F.3d at 501 (summarizing exceptions).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16798230
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

James MOORE; Andrew L. Brown, Plaintiffs,

v.

BROOKLYN HOSPITAL CENTER;
Wyckoff Heights Med. Center, Defendants.

22-CV-04208 (KAM)
|
Signed November 8, 2022

**Attorneys and Law Firms**

James Moore, Brooklyn, NY, Pro Se.

Andrew L. Brown, Brooklyn, NY, Pro Se.

### MEMORANDUM AND ORDER

KIYO A. MATSUMOTO, United States District Judge.

**\*1** On July 15, 2022, *pro se* Plaintiffs James Moore and Andrew L. Brown ("Plaintiffs") filed this *in forma pauperis* ("IFP") action asserting federal-question jurisdiction, and seeking damages against defendants for medical malpractice and negligence against Defendants Brooklyn Hospital Center and Wykoff Heights Medical Center ("Defendants"). [1] For the reasons set forth below, Plaintiffs' requests to proceed *in forma pauperis* pursuant to 🚩 28 U.S.C. § 1915 are GRANTED, and the action is DISMISSED without prejudice for lack of subject matter jurisdiction.

### Background

The following facts are taken from the Complaint, the allegations of which are assumed to be true for purposes of this Memorandum and Order. On June 20, 2022, Plaintiff James Moore, the father of co-plaintiff Andrew Brown, was admitted to Brooklyn Hospital and discharged on June 22, 2022. (ECF No. 1, Complaint at 5.) On June 24, 2022, following a medical incident, Moore was taken to Wycoff Heights Medical Center and discharged that day. (*Id.*) Following his discharge, Moore fell, was readmitted,

and a pacemaker was implanted. (*Id.*) Plaintiffs now request monetary damages of $50,000 from Defendants.

### Standard of Review

A district court shall dismiss an *in forma pauperis* action where the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 🚩 28 U.S.C. § 1915(e)(2)(B).

Although courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," 🚩 *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotations omitted), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." 🚩 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 🚩 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting 🚩 *Twombly*, 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting 🚩 *Twombly*, 550 U.S. at 557).

**\*2** In reviewing a pro se complaint, the Court must be mindful that Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." 🚩 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting 🚩 *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* 🚩 *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a pro se complaint liberally.").

### Discussion

If the Court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (holding that a district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000))).

According to the Complaint, the basis for subject matter jurisdiction is federal question jurisdiction, which provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." (ECF No. 1, Complaint at 4.) Bounds v. Pine Belt Mental Health Care Res., 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A case properly invokes federal question jurisdiction when federal law creates the plaintiff's cause of action or when "the well-pleaded complaint necessarily depends on resolution of a substantial question of federal law." Bracey v. Bd of Educ. of City of Bridgeport, 368 F.3d 108, 113 (2d Cir. 2004) (internal quotation marks and citation omitted).

Construing Plaintiffs' allegations to "raise the strongest arguments they suggest," McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)), the Complaint does not suggest any basis for the exercise of subject matter jurisdiction. Plaintiffs' claims do not arise under the Constitution or any federal laws. *See* 28 U.S.C. § 1331. Plaintiffs' claims for negligence and medical malpractice arise under state law, not federal law. *See, e.g., Reyes v. New York Presbyterian Hosp.*, No. 20-CV-3046, 2020 WL 6161261, at *2 (E.D.N.Y. Oct. 21, 2020); *Panchitkhaew v. Long Island Jewish Med. Ctr.*, No. 18-CV-4434, 2019 WL 1492780, at *3 (E.D.N.Y. Apr. 4, 2019) (noting that medical malpractice and negligence are state law claims). Because the Court does not have federal-question jurisdiction, the Court can not adjudicate this claim, unless it has diversity jurisdiction.

Under the diversity statute, federal courts have subject matter jurisdiction over claims when the plaintiff and defendants are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also* Bayerische Landesbank,

N. Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 48 (2d Cir. 2012). The party asserting diversity jurisdiction bears the burden of proving that it exists by a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005); *Finnegan v. Long Island Power Auth.*, No. 17-CV-4424, 2019 WL 4467559, at *3 (E.D.N.Y. Sept. 18, 2019). Because all parties to the action are citizens of New York, diversity of citizenship is lacking, and the requirements of 28 U.S.C. § 1332 are not met. *See, e.g., Nimham-El-Dey v. Health and Hosps.*, No. 21-CV-8238, 2021 WL 5166385, at *4 (S.D.N.Y. Nov. 5, 2021) (noting that plaintiff asserts state law claims of medical malpractice, but he does not allege facts demonstrating that the Court has diversity jurisdiction to consider those claims). In the absence of a basis to support this Court's subject matter jurisdiction, Plaintiffs' complaint must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ P. 12 (h)(3).

**\*3** Plaintiffs' claims are dismissed without prejudice and they may pursue any valid claims they may have against the Defendants in state court.

Plaintiff may also seek assistance from The Federal Pro Se Legal Assistance Project, a free, limited-scope legal assistance clinic operated by the City Bar Justice Center of the New York City Bar Association. The website is: https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project/ and the free hotline phone number is: 212-626-7383.

## Conclusion

For the reasons set forth above, Plaintiffs' complaint, filed *in forma pauperis*, is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and Federal Rule of Civil Procedure 12(h)(3).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See* Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**Moore v. Brooklyn Hospital Center, Slip Copy (2022)**

**All Citations**

Slip Copy, 2022 WL 16798230

## Footnotes

1    The 90–day period for service of process on Defendants set forth in Federal Rule of Civil Procedure 4(m) expired on October 13, 2022, and Defendants have not been served. Failure to serve process within 90 days provides authority for the Court to dismiss the case. *Fed. R. Civ. P. 4(m)* ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.") The Court, however, considers Plaintiff's Complaint on the merits.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 72 of 85

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 73 of 85

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint;

(5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* *Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* *Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-00471-GTS-ML    Document 5    Filed 04/20/23    Page 74 of 85

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 75 of 85

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. See *LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. See *Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 76 of 85

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.
Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.
In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.
Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-00471-GTS-ML   Document 5   Filed 04/20/23   Page 77 of 85

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

End of Document                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2390248
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher Javier VAZQUEZ Carbuccia, Plaintiff,

v.

State of NEW YORK and Schenectady
Family Court, Defendants.

No. 1:22-CV-196 (GTS/CFH)
|
Signed June 30, 2022

**Attorneys and Law Firms**

Christopher Javier Vazquez Carbuccia, 45 Arnold Ave., Apt.
2, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. In Forma Pauperis**

*1  Plaintiff pro se [1] Christopher J. Vazquez ("plaintiff")
purported to commence this action on March 2, 2022, by
filing a complaint. See Dkt. No. 1 ("Compl."). Plaintiff did
not pay the filing fee or submit an application for leave to
proceed in forma pauperis ("IFP"). See id. Accordingly, the
Court administratively closed the case with an opportunity to
comply with the filing fee requirement. See Dkt. No. 2. The
Order directed plaintiff to either submit the full $402 filing fee
or complete an IFP application within thirty days of the filing
date of the Order. See id. at 1. The Order was filed on March
4, 2022. See id. Thus, plaintiff had until April 4, 2022, [2] to
timely pay the filing fee or file an IFP application. Plaintiff
was sent a copy of the Order by regular mail. On March 18
and April 28, 2022, plaintiff contacted the Albany Clerk's Office
asking about the status of his case and he was informed that
he needed to submit his IFP application. Plaintiff submitted
an IFP motion on May 5, 2022, 31 days past the deadline set
forth in the administrative closure order. See Dkt. No. 3.

Despite plaintiff's untimeliness, given the fact that he
is proceeding pro se, and due to special solicitude, the
undersigned will consider this belated filing. Plaintiff has
previously failed to follow these filing requirements, but the

undersigned has nevertheless considered the IFP application.
See Vazquez v. Times Union Newspaper, 1:21-CV-1359
(DNH/CFH), Dkt. No. 5 at 1-2; Vazquez v. Hometown Health
Center, 1:21-CV-1371 (MAD/CFH), Dkt. No. 8 at 1-2. The
undersigned has reviewed plaintiff's present IFP motion and
determines that he financially qualifies to proceed IFP for the
purpose of filing. [3]  See Dkt. No. 3.

**II. Initial Review**

**A. Legal Standard**

Section 1915 [4] of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court
shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It
is a court's responsibility to determine that a plaintiff may
properly maintain his complaint before permitting him to
proceed with his action.

*2  Where, as here, the plaintiff proceeds pro se, "the court
must construe his [or her] submissions liberally and interpret
them to raise the strongest arguments that they suggest."
Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir.
2014) (per curiam) (citation and internal quotation marks
omitted). This does not mean the Court is required to accept
unsupported allegations that are devoid of sufficient facts
or claims. Although detailed allegations are not required at
the pleading stage, the complaint must still include enough
facts to provide the defendants with notice of the claims
against them and the grounds on which these claims are based.
See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell
Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se
litigants are "not exempt ... from compliance with relevant
rules of procedural and substantive law[.]" Traguth v.
Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).
Ultimately, the plaintiff must plead "enough facts to state a
claim to relief that is plausible on its face." Twombly,
550 U.S. at 570. "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the

misconduct alleged." 📁 Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a) (2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." 📁 Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain,

the court has the power, on its own initiative ... to dismiss the complaint." 📁 Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See 📁 Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Plaintiff's Filing History**[5]

**\*3** Plaintiff has a history of filing in the Northern District of New York, untimely IFP applications and complaints that are often dismissed at the pleading stage. The following recitation of plaintiff's filing history has been derived from Chief Judge Suddaby's Show Cause Order in case number 1:22-PF-2 (GTS), Dkt. No. 1 at 2-4:

1. Vazquez v. Dollar General Corp., 1:21-CV-0330 (BKS/ CFH), Dkt. No. 14 (dismissing plaintiff's complaint without prejudice); Dkt. No. 15 (entering judgment dismissing plaintiff's complaint following his failure to file an amended complaint); see 2021 WL 4407817, at \*4 (N.D.N.Y. Sept. 27, 2021), motion for relief from judgment denied, 2022 WL 279560 (N.D.N.Y. Jan. 31, 2022).[6]

2. Vazquez v. Times Union Newspaper, 1:21-CV-1359 (DNH/CFH), Dkt. No. 2 (ordering administrative closure for plaintiff's failure to pay the filing fee or file an IFP motion); Dkt. Nos. 5, 7, 8 (granting plaintiff's belatedly filed IFP motion but dismissing the complaint with prejudice and without leave to amend for failure to state a claim or establish subject matter jurisdiction); see 2022 WL 837474, at \*4 (N.D.N.Y. Mar. 1, 2022), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y. Mar. 21, 2022).

3. Vazquez v. Hometown Health Center, 1:21-CV-1371 (MAD/CFH), Dkt. No. 2 (ordering administrative closure for plaintiff's failure to pay the filing fee or file an IFP motion); Dkt. No. 8 (granting the belatedly filed IFP application and recommending dismissal of the complaint for failure to establish subject matter jurisdiction or state a claim); see 2022 WL 2304213, at \*6 (N.D.N.Y. June 27, 2022).

4. <u>Vazquez v. St. Mary's Healthcare</u>, 1:22-CV-0317 (GTS/ TWD), Dkt. No. 2 (ordering administrative closure for failure to pay the filing fee or file an IFP motion); Dkt. No. 7 (recommending dismissal of the complaint for failure to state a claim or establish subject matter jurisdiction); <u>see</u> 2022 WL 1659194, at *4 (N.D.N.Y. May 25, 2022); Dkt. Nos. 9, 10 (dismissing plaintiff's complaint without prejudice and without leave to amend).

Based on these filings, and plaintiff "becom[ing] increasingly abusive when communicating with Court staff[,]" on May 2, 2022, Chief Judge Suddaby ordered plaintiff to, within fourteen days, "show cause, in writing, why he should not be enjoined from filing any future pleadings or documents of any kind (including motions) in the Northern District of New York *pro se* without prior permission of the Chief Judge or his or her designee[.]" <u>In re: Christopher J. Vazquez</u>, 1:22-PF-002 (GTS), Dkt. No. 1 at 4, 8. Plaintiff did not respond within fourteen days and on May 23, 2022, Chief Judge Suddaby entered a pre-filing injunction pursuant to

🚩 28 U.S.C. § 1651(a), permanently enjoining plaintiff from filing any documents in the Northern District without prior permission of the Chief Judge or his or her designee. <u>See id.</u> at Dkt. No. 2. Plaintiff's filings in the present matter were filed prior to Chief Judge Suddaby's imposition of the injunction and, as such, the undersigned will proceed to review the

complaint's sufficiency under the 🚩 § 1915 standard. <u>See id.</u> at 7 ("[N]othing in this Pre-filing Order ... affects his rights in any of his currently pending actions[.]").


### C. Plaintiff's Complaint

 **\*4**  Plaintiff's "complaint" is a one-page handwritten letter stating that he is "suing the State of New York for the mis-handling of [his] case in the 'Schenectady County Family Court System.' " Compl. (emphasis omitted). Plaintiff asserts that the Schenectady County Family Court "completely ignored all the information [he] gave them, and allowed an enraged vindictive girl, to take control of [his] daughter." <u>Id.</u> Plaintiff also seeks to sue "the State of New York for defamation, emotional distress, and abuse of power. There were dishonorable restraining orders put in play [sic], all [he] believe[s], on the State[']s data, pass data. No proper vetting process on the State[']s behalf." <u>Id.</u> (emphasis omitted). Plaintiff contends that "[t]he State made it extremely easy

for this vindictive, stressed, enraged girl, to literally walk in and put a man[ ] through a gruesome process that is not only predicated on vindiction [sic] but also a bias, skewed perspective." <u>Id.</u> Plaintiff states that he "want[s his] hearing by August 18th. [He] want[s] 2.5 million USD from the State for their incompetence." <u>Id.</u>

On May 5, 2022, plaintiff submitted a copy of a Complaint and Summons from the Supreme Court of the State of New York, County of New York. <u>See</u> Dkt. No. 4. Plaintiff crossed off "New York" as the county, and hand-wrote, "Schenectady." <u>Id.</u> at 1-2. Plaintiff named the Schenectady County Family Court in the Complaint and Summons, and wrote that, "[o]n and/or, around, the Duration of 4/13/2020 – 9/17/21, also carrying into 2022 year, today's date 4/18/22 the Defendant(s), approved ILLEGAL restraining orders that prevented me from seeing my daughter and still is." <u>Id.</u> at 2. Plaintiff states that "[t]he Defendant(s), refused to accept my wishes with unjustifiable means. Schenectady County and it's associates, have went Rogue I believe with bad intent, and I am here to be compensated for their doing, nothing more, nothing less." <u>Id.</u>

Plaintiff also submitted a letter seeking diplomatic immunity and "to take an oath, to insure [sic] confidentiality[.]" Dkt. No. 5. Plaintiff filed this same letter in his other cases filed in the Northern District. [7] Finally, plaintiff submitted a letter seeking "7 Billion USD for the State's ... Abuse of power in 'Schenectady County Family Court' And also in a case that '[he] was involved in' ... in 2013...." Dkt. No. 6. Included with the letter, is an Albany County 2013 Certificate of Conviction for attempted criminal possession of contraband or narcotics in which plaintiff received five years' probation, his driver's license was suspended, and he had to pay a "Mandatory Surcharge of $325.00[.]" <u>Id.</u> at 2.


### D. Analysis

### 1. Subject Matter Jurisdiction

As an initial matter, plaintiff's purported complaint fails to establish this Court's subject matter jurisdiction. <u>See</u> Compl. Subject matter jurisdiction can be established either through federal question or diversity jurisdiction. Under 28 U.S.C. § 1331, a case "arising under the Constitution, laws, or treaties of the United States[ ]" is a federal question case. Under 🚩 28 U.S.C. § 1332, a case in which a citizen of one State

sues a citizen of another State, and the amount in controversy is more than $75,000, is a diversity case. If the Court has subject matter jurisdiction over federal claims, the Court may choose to exercise supplemental jurisdiction over any state law claims. See 28 U.S.C.A. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy....").

Plaintiff has not named a Constitutional provision or federal law under which he seeks to bring his claims; therefore, he has not established federal question jurisdiction. See Compl; see, e.g., Wray-Davis v. N.Y. Methodist Hosp., No. 16-CV-1618 (NGG/CLP), 2016 WL 1441332, at *2 (E.D.N.Y. Apr. 8, 2016) ("[T]he Complaint suggests no basis for federal-question jurisdiction, as [the p]laintiff is not suing under the Constitution or any federal laws. Instead, [the p]laintiff alleges malpractice, which is a state law claim."). Similarly, plaintiff has not purported to sue a citizen of a different state; therefore, diversity jurisdiction does not exist. See Compl. As subject matter jurisdiction has not been established, the Court cannot then exercise supplemental jurisdiction over any purported state law claims such as plaintiff's reference to "defamation." Id.; see Kolari v. New York Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (citing 28 U.S.C. § 1367(c)(3)) (explaining that the district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed). Accordingly, as plaintiff has not established this Court's jurisdiction, the undersigned recommends dismissing the purported complaint without prejudice. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

 *5  Even if the undersigned were to liberally construe the purported complaint as alleging a due process violation pursuant to 42 U.S.C. § 1983 as plaintiff states that his family court case was "mishandled," such a claim would necessarily fail as the State of New York and Schenectady County Family Court are immune from suit. Compl.; cf. Amato v. McGinty, No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *6 (N.D.N.Y. June 6, 2017), report and recommendation adopted, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (citations omitted) ("To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted 'under color of state law.' ").

### 2. Eleventh Amendment Immunity

"Under clearly established law, the Eleventh Amendment provides states immunity in federal court." Johnson v. Fischer, No. 1:19-CV-1384 (TJM/DJS), 2020 WL 758964, at *2 (N.D.N.Y. Feb. 14, 2020) (citing Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006)). "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision, 16 F. Supp. 3d 221, 225 (W.D.N.Y. 2014) (citations omitted). "It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." Mamot v. Bd. of Regents, 367 F. App'x. 191, 192 (2d Cir. 2010) (summary order) (internal citations omitted). Accordingly, plaintiff cannot bring this action against the State of New York.

Moreover, "[t]he Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.' " McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001) (citations omitted); see McKnight v. Middleton, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (citations omitted) ("[T]he New York State Unified Court System is entitled to sovereign immunity as an 'arm of the State.' "). The Schenectady County Family Court is a part of the New York State Unified Court System and is entitled to sovereign immunity. See Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *3 (S.D.N.Y. Aug. 6, 2020) (collecting cases) ("The New York Family Courts ... are arms of the State of New York and enjoy Eleventh Amendment immunity."). Accordingly, had plaintiff established subject matter jurisdiction, his purported claim against the Schenectady County Family Court would have to be dismissed.

### 3. Additional Letters

Plaintiff's letter seeking "Diplomatic Immunity[,]" is baseless as plaintiff is not a diplomat. Dkt. No. 5; see Swarna v. Al-Awadi, 622 F.3d 123, 133 (2d Cir. 2010) (quoting Vienna Convention art. 31(1)) ("[A] 'diplomatic agent shall enjoy immunity from the criminal ... civil and administrative jurisdiction' of the receiving state."). Further, to the extent plaintiff's May 6, 2022, letter references a 2013 conviction, he did not include information concerning the conviction in his purported complaint, his letter does not provide any information as to the relief he seeks in relation to the conviction, and he does not explain how an Albany County conviction relates to the State of New York or its "vetting process" of his Schenectady County Family Court case. Compl.; see Dkt. No. 6; see also 28 U.S.C. § 1915A ("[T]he court shall [ ] dismiss the complaint ... if the complaint [ ] is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"). Accordingly, such claims could not stand even if plaintiff had established jurisdiction.

### III. Opportunity to Amend

**\*6** Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). "[L]ack of subject-matter jurisdiction is generally viewed as a substantive defect." Planck v. Schenectady Cnty., No. 1:12-CV-0336 (GTS/DRH), 2012 WL 1977972, at \*6 (N.D.N.Y. June 1, 2012) (footnote omitted). As plaintiff has not established jurisdiction, the purported defendants are immune from suit, and in light

of the problems in plaintiff's filing history, the undersigned recommends dismissing plaintiff's complaint without leave to amend. See, e.g., St. Mary's Healthcare, 2022 WL 1659194, at \*4 (citing Johnson v. Progressive.com, 19-CV-11202 (CM), 2020 WL 589127, at \*1 (S.D.N.Y. Feb. 5, 2020) (declining to grant *pro se* plaintiff leave to amend in light of the plaintiff's "abusive litigation history" and where amendment would be futile)); see also Times Union Newspaper, 2022 WL 833370, at \*1 (dismissing with prejudice and without leave to amend).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 3) will be considered, and, upon consideration, is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [8]

**All Citations**

Slip Copy, 2022 WL 2390248

### Footnotes

1    Pro se means "to appear for one's self" or that a person is not represented by an attorney or another person. Iannaccone v. L., 142 F.3d 553, 558 (2d Cir. 1998).

2    Thirty days from March 4, 2022, was April 3, 2022. However, April 3, 2022, was a Sunday; therefore, plaintiff had until the April 4, 2022, to timely file the IFP application. See FED. R. CIV. P. 6(a)(1).

3    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

4    The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

6    Although the undersigned provides the Westlaw citations for plaintiff's other cases in the Northern District, copies have not been provided to plaintiff as he was provided copies by certified and/or regular mail when the orders or decisions were filed.

7    See Dollar General Corp., 1:21-CV-330, Dkt. No. 32; Times Union Newspaper, 1:21-CV-1359, Dkt. No. 10; Hometown Health Center, 1:21-CV-1371, Dkt. No. 6; St. Mary's Healthcare, 1:22-CV-317, Dkt. No. 6.

8    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 3100553
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher Javier VAZQUEZ CARBUCCIA, Plaintiff,

v.

State of NEW YORK; and Schenectady
County Family Court, Defendants.

1:22-CV-0196 (GTS/CFH)
|
Signed August 4, 2022

**Attorneys and Law Firms**

CHRISTOPHER JAVIER VAZQUEZ CARBUCCIA,
Plaintiff, Pro Se, 45 Arnold Avenue, Apt. 2, Amsterdam, New
York 12010.

### <u>DECISION and ORDER</u>

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil
rights action filed by Christopher Javier Vazquez Carbuccia
("Plaintiff") against the State of New York and Schenectady
Family Court ("Defendants") is United States Magistrate
Judge Christian F. Hummel's Report-Recommendations
recommending that Plaintiff's Complaint be dismissed

without prejudice and without prior leave to amend for lack
of subject-matter jurisdiction. (Dkt. No. 8.) [1] Plaintiff has not
filed an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Hummel's thorough Report-
Recommendation, the Court can find no clear-error in
the Report-Recommendation. [2] Magistrate Judge Hummel
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein, and Plaintiff's
Complaint is dismissed without prejudice and without prior
leave to amend.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 8) is **<u>ACCEPTED</u>** and
**<u>ADOPTED</u>** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is
**<u>DISMISSED</u>** without prejudice and without prior leave to
**amend.**

**All Citations**

Slip Copy, 2022 WL 3100553

### Footnotes

1    The Court notes that, although Plaintiff was enjoined from litigating civil actions pro se in this District, that
     injunction was issued after he filed his Complaint in this action on March 2, 2022, and thus does not apply to
     this action. *In re: Christopher J. Vazquez*, 22-PF-0002, Pre-Filing Order, at 1-3 (N.D.N.Y. filed May 23, 2022).

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to
     only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing
     such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record
     in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at
     *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's]
     report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal
     quotation marks omitted).

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.